[No. C.D. 4269.   En Banc.   November 26, 1986.]

*In the Matter of the Disciplinary Proceeding
Against* PHILIP P. MALONE, *an
Attorney at Law.*

*Robert T. Farrell,* for Bar Association.

*Philip P. Malone,* pro se.

UTTER, J.—Philip Malone and the Washington State Bar Association counsel challenge the Disciplinary Board's 60–day suspension of Malone for mishandling and misappropriating client funds. While we affirm the Disciplinary Board's result, we find extenuating circumstances which justify our suspending Malone's 60–day suspension from practice. We agree that Malone should be placed on 2–year probation under the conditions outlined by the hearing officer and adopted by the Board.

Philip Malone was admitted to the Washington bar on March 8, 1954. From January 1, 1974 to September 30, 1982, the period during which the alleged infractions occurred, Malone practiced in Poulsbo, Washington.

In detailed findings of fact, the hearing officer recounted numerous incidents to justify his conclusions of pervasive commingling, negative and positive client balances, invasion of client funds, client trust fund deposits and withdrawals being made without identification of client, improper maintenance of trust fund records, and failure to withdraw attorney's fees when earned. See conclusion of law 45; bar file, at 192. Moreover, the forgeries and account manipulations of Malone's bookkeeper were also attributed to Malone's failure to exercise responsibility for trust funds in his charge. While too numerous to summarize, the factual findings are amply supported by substantial evidence in the record. See especially Auditor's Report and Rainier Bank client trust account ledger. Bar file, at 14–38.

It appears that in October 1982, during a bar investigation of an unrelated complaint, Malone informed the investigator that his bookkeeper/accountant had been stealing money from him for 4 years. Earlier, on July 29, 1982, Malone had obtained a default judgment against his bookkeeper for the principal amount of the forgeries, as well as accrued interest.

In the subsequent bar audit of Malone's account records, the auditor found that the bookkeeper had indeed forged

checks on three of Malone's accounts: (1) American Marine Bank client trust account; (2) American Marine Bank general office account; and (3) American Marine Bank Chief Seattle Properties account. The auditor segregated all forged and potentially forged checks on the American Marine Bank client trust account. These checks did not become a part of the examination of Malone's trust account practices. The bar audit focused on two of Malone's accounts: (1) The American Marine Bank client trust account, and (2) the Rainier Bank client trust account (on which the bookkeeper committed *no* forgeries). Malone's briefs notwithstanding, the bookkeeper's thefts are not relevant to these proceedings.

While finding the violations to be "gross", "too many", and "unrefuted", the hearing officer declined to characterize them as "misappropriation" because of that word's criminal connotation. Report of Proceedings, at 339–40. At the time of the hearing, he found that Malone "does not understand the purposes of requirements of DR 9–102 or the basic requirements for handling a client trust account." Finding of fact 41. The hearing officer recommenced a 6–month suspension followed by a 2–year probation.

The hearing officer, however, noted several mitigating factors. Malone himself had brought the trust account discrepancies to the attention of the bar association and had "volunteered in a cooperative manner throughout the audit". Finding of fact 43. Malone appeared to be a competent lawyer and in over 32 years of practice had received no complaints from clients.[1] Most importantly, no clients had been shorted any trust funds.

In a 10 to 2 vote, the Disciplinary Board adopted the hearing officer's findings and conclusions and modified his recommendation by ordering a 60–day suspension, to be followed by the 2–year probation. The two dissenters objected only to the modification of the suspension recom-

---

[1]The complaint giving rise to the audit was dismissed, the investigation showing no misconduct by Malone. Bar file, at 168.

mendation.

Both parties have appealed. Bar counsel raises the following issues: (1) Is there substantial evidence in the record to support the Disciplinary Board's determination that Malone is unlikely to commit these violations again? (2) Does Malone's conduct warrant disbarment? Malone challenges the bar's conduct in the investigation and prosecution of its claims. His various challenges are without merit and are not discussed further.

## A
### LIKELIHOOD OF REPEAT VIOLATIONS

In reducing to 60 days the hearing officer's recommended sanction of a 6–month suspension, the Board determined, in part, that the violations would probably not be repeated. Bar file, at 198. Bar counsel contends that there is insufficient evidence in the record to support this finding. Counsel points to the hearing officer's written and oral observation that Malone showed no understanding of the purpose of CPR DR 9–102 or the basic requirements for handling client trust accounts. While acknowledging Malone's efforts to establish some better trust fund management practices, the hearing officer questioned the efficacy of those efforts.

This case represents one of the rare advantages of pro se advocacy in that this court was afforded the opportunity to test the bar counsel's claim. At oral argument, Malone evidenced an understanding of his basic duties as a fiduciary of client funds. Moreover, the conditions of his probation require Malone to obtain professional trust accounting assistance, as well as submit quarterly trust account reports to the association to ensure his CPR DR 9–102 compliance. We do not find Malone's ignorance, such as it is, to be "invincible" and we are confident that the probation conditions serve to justify the Board's confidence.

## B
### SHOULD MALONE BE DISBARRED?

Bar counsel objects to the Board's reduced sanction. "There is simply no precedent at this point to support the

Disciplinary Board's decision that an attorney found to have misappropriated some $10,000 in clients funds, as part of a pattern of long time trust account abuse, should merely receive a 60–day suspension from the practice of law." Brief of Bar Association, at 21. Counsel also objects to the hearing officer's recommended 6–month suspension. He contends that the appropriate sanction is disbarment, which is "the usual sanction for misappropriation or misuses of client funds", unless there are "extraordinary mitigating circumstances". *In re Stock,* 104 Wn.2d 273, 280, 704 P.2d 611 (1985).

Mr. Malone contends that he should not be sanctioned at all. He argues that his reputation and finances have already been unduly harmed by bar counsel's aggressive prosecution of the case, that his retirement funds were also stolen by his bookkeeper and trusted friend, and that any violations he committed were only technical in nature. He further acknowledged that he should have more closely supervised his bookkeeper and that his accounting procedures needed radical change.

█ █ While the court is ultimately responsible for attorney discipline, it has "adopted the standard . . . that the Board's recommendation should be affirmed unless this court can articulate a specific reason to reject the recommendation." *In re McLeod,* 104 Wn.2d 859, 865, 711 P.2d 310 (1985). To evaluate the Board's recommendation, this court has proposed a number of factors. The court will depart from the Board's recommendation only if one of the factors "clearly persuades" the court that the recommended sanction is inappropriate. *In re Noble,* 100 Wn.2d 88, 95, 96, 667 P.2d 608 (1983). The factors are: (1) Whether the sanction is calculated to achieve the dual purposes of (a) protecting the public and (b) deterring other lawyers from similar misconduct; (2) Whether the sanction is proportionate to the misconduct; (3) The effect of the sanction on the attorney; (4) Whether the Board's recommendation is fairly supported by the record; and (5) The extent Board members agree on the appropriateness of the sanction.

(1)(a) <u>Public protection.</u> The adequacy of the evidence to support the Board's finding that Malone is unlikely to repeat the offense applies equally to the question about the degree of protection the sanction affords the public. Under the conditions of probation, Malone's handling of trust accounts will be closely monitored for the next 2 years. After that, he will be subject to the possibility of a random spot audit under RLD 13.1. Given the finding of lack of criminal intent, disbarment would be an overly harsh method of protecting the public. Malone is 62 years old and unlikely to practice many more years. Hence, we find the probation to provide a sufficient sanction.

(1)(b) <u>Deterring other attorneys.</u> This court has observed that reasonable attorneys will appreciate the serious consequences of even a 90–day suspension. *Noble,* 100 Wn.2d at 96. Though the requirements to notify clients of a 60–day suspension are less strict, the consequences to reputation and finances remain significant and will be discussed more thoroughly below. Because, however, we find this case to be unique, there are few attorneys who could hope to count on such leniency.

(2) <u>Proportionality of sanction to misconduct.</u> This court will compare the recommendation of a 60–day suspension with the sanctions imposed in similar cases. "Such comparisons will seldom be determinative, given the infinite variety of misconduct and of aggravating and mitigating factors." *Noble,* 100 Wn.2d at 95. In reducing the suspension, the Board noted (1) Malone's cooperation with the bar investigation, (2) the lack of harm to any client, (3) the lack of any intentional defalcation, (4) the lack of any prior discipline, and (5) the unlikelihood of a repeat violation. Bar file, at 198.

Arguing for disbarment, bar counsel distinguishes the *Noble* case, in which this court recently upheld a 90–day suspension for mishandling of client funds. The court's leniency was based primarily on Noble's successful rehabilitation after having suffered from alcohol abuse for the period of his violations. The court found, however, that

Noble's willing acceptance of responsibility and the absence of a pattern of misuse were also mitigating factors. Aggravating factors included two previous censures for neglect of legal matters.

Bar counsel asserts that Malone's situation is more analogous to the one found in *In re Rosellini,* 97 Wn.2d 373, 646 P.2d 122 (1982). In *Rosellini,* however, this court found the attorney's violations not only to be serious, but intentional. A majority of the court doubted the sincerity of the attorney's remorse and contrition because of his attempts to conceal the abuses both from clients and the bar. 97 Wn.2d at 379. This court found no mitigating circumstances for Rosellini. 97 Wn.2d at 380. The specific finding of no criminal intent and the other above mentioned mitigating factors appear to separate Malone's case from Rosellini's.

A better case for disbarment could be based on *In re Moynihan,* 97 Wn.2d 237, 643 P.2d 439 (1982). Over a 2–year period, Moynihan had inappropriately withdrawn $5,000 from client trust funds, offering only two mitigating factors—no prior misconduct and no ultimate loss to clients. Malone's violations took place over a longer period (8 years) and involved more money (over $10,000). The facts differ, however, in that Moynihan had also been found to have neglected one matter and to have failed to cooperate (apparently, in the investigation); moreover, the Board had adopted the hearing officer's recommendation to disbar. 97 Wn.2d at 238.

Further analogization to various cases does not appear fruitful. The cases appear so fact bound as to defy more significant comparison.

(3) The effect of the sanction on Malone. The effect of a 60–day suspension is significant, not only for the lost economic opportunities, but for the resulting rupture of client, staff and fellow attorney relationships. *See Noble,* 100 Wn.2d at 97. All clients would be notified of his suspension and the reasons for it. Clients with pending litigation or administrative proceedings must be advised to promptly

replace the sanctioned attorney who may not represent them. Upon request, clients or their substituted counsel must be provided with all files and documents, even if the attorney has a possible RCW 60.40 claim. RLD 8.1(c). Staff may seek employment elsewhere. A 6–month suspension exacerbates these concerns not only because of the longer duration, but because the notice requirements are even more stringent and potentially disruptive. *See* RLD 8.1(a). That Malone is a sole practitioner makes any sanction all the more burdensome. Moreover, given his age, he would have little time in which to recover from the lost opportunities and potential ruptures.

(4) Recommendation fairly supported. We find the Board's recommendation to be fairly supported by the record. We do, however, find Malone's age, years of service, the replacement of any clients funds before the bar association investigation, and lack of intent to violate CPR DR 9–102 to have more of a mitigating effect than did the Board.

(5) Degree of Board agreement. While not unanimous, a 10 to 2 decision represents a very solid majority. In *Rosellini,* this court followed the bar's 3 to 2 recommendation to disbar. 97 Wn.2d 373. It is only because of the above mentioned factors that we depart somewhat from the Board's result.

Misappropriation and mishandling of client funds are serious offenses, normally meriting disbarment. While we are generally reluctant to depart from the Board recommendation, we do find the circumstances of this situation to be unique, justifying our departure from the norm. Costs and expenses are to be assessed against Malone.

DOLLIVER, C.J., and PEARSON, CALLOW, and DURHAM, JJ., concur.

DORE, J. (concurring)—In a concurring opinion filed this same day, I voted for disbarment for an attorney wherein I stated "Theft by an attorney simply cannot be counte-

nanced, and ordinarily warrants disbarment in all but the most extraordinary circumstances." *In re Selden,* 107 Wn.2d 246, 259, 728 P.2d 1036 (1986).

In serving on this court, I try to be consistent. I believe the subject case has extraordinary circumstances which prevent disbarment and merit leniency.

1. Attorney Malone effectively and successfully practiced law in Seattle and Poulsbo for some 29 years, and had a large alumni of satisfied clients.

2. Malone had experienced no prior discipline during this 29–year period of practicing law.

3. That in October 1982, Malone voluntarily informed the bar association that his bookkeeper/accountant had been stealing money from his law accounts for the past 4 years. Earlier in July 1982, Malone had obtained a default judgment against his bookkeeper for the principal amount of the forgeries, as well as accrued interest. In the subsequent bar audit it was established that the bookkeeper had forged checks in three different trust accounts in the amount of some $56,000. It was concluded that the forgeries of the bookkeeper Thorsen were so extensive and commingled with the three American Marine trust accounts, that only the Rainier Bank client trust account could be examined to determine Malone's personal accountability.

In my opinion the only solid evidence of invading trust funds against Malone involves client Crum. The audit shows that Malone used $11,000 of Crum's money which he withdrew from the Rainier Bank client trust account. Malone returned $10,602.10 of this amount in a personal check after the discrepancy came to light. It was further shown that such trust account funds were used by Malone for his personal use. Such conduct deserves a strong sanction.

Malone in his brief and oral argument explains this record. He advised that Crum was a seaman who hired Malone to process his claim for injuries Crum received on an Alaskan fishing boat. Those services were to be performed in two parts. Malone was paid a $2,000 fee as a

retainer for wage loss claims, and, then by agreement, he was to receive a fee of $8,000 for filing a wage claim action in federal court. Malone, with the help of the client, recovered from the insurance carrier the sum of $25,346.27. Malone deposited some $11,000 of such money in the client trust account ($8,000 as fee—$3,000 as costs) but he didn't designate them as *his* fee and advanced costs. Apparently Malone was trying to charge a one–third contingent fee for the recovery of the wages (writer's speculation). Crum filed a bar complaint against Malone for charging an excessive fee and Malone settled on a time basis for $700. As he had already drawn down $11,000 as fees and costs which he had spent for his own account, he replaced it with other trust fund moneys. Had he had the money which the bookkeeper had stolen (some $56,000) he could have used his own money. Of course Malone's explanation is not a defense to misuse of trust funds, but in my opinion mitigates the penalty. If you believe Malone's explanation it illustrates that he had no intention of depriving Crum of his money. Rather, the situation involved a fee dispute, and only because of Malone's bookkeeper's earlier transgressions was Malone unable to replace the trust fund money promptly. Because of Malone's long and sanction–free legal career, I would give him the benefit of the doubt.

I concur with the majority's disposition of the subject case.

BRACHTENBACH, J. (dissenting)—I dissent because I consider the majority's discipline to be far less than required by attorney Malone's actions.

The hearing officer, after testimony resulting in a 345–page record, found:

> Mr. Malone has demonstrated that he still does not understand the purposes or the requirements of DR 9–102 or the basic requirements for handling a client trust account. Deviations in trust account bank balances and between trust account bank balances and client ledger cards were gross, frequent, and occurred over a long period of time. Mr. Malone failed to supervise his book-

keeper and failed personally to examine his books and records. Even though Mr. Malone misplaced reliance on a good friend, he is responsible for his bookkeeper's actions.

Finding of fact 41; bar file, at 191–92.

From the recurrent negative client ledger balances, Mr. Malone had ample and actual notice of problems in the trust accounts. Mr. Malone casually and repeatedly used his clients' funds for his own purposes, then restored those funds from his personal accounts.

Finding of fact 42; bar file, at 192.

The hearing officer entered conclusions of law, based upon 45 findings of fact, that attorney Malone had committed two violations of RLD 1.1(i), three violations of CPR DR 9–102(A), one violation of CPR DR 9–102(A)(2), and four violations of CPR DR 9–102(B)(3).

For these 10 violations, the majority suspends Malone for 60 days and then suspends the suspension. The conditions for 2 years of probation merely require Malone to do what he ought to do anyway. His lack of understanding of his obligation regarding trust funds is evidenced by the fact that he is required to seek professional trust account assistance and submit quarterly trust account reports to ensure compliance with CPR DR 9–102. Such conditions hardly comport with a holding that he is to be held out to the public as fully capable of handling their funds in trust.

It is significant that, after extensive testimony from Malone, the hearing officer was compelled to find as a fact Malone "has demonstrated that he still does not understand the purposes or the requirements of DR 9–102 or the basic requirements for handling a client trust account." Bar file, at 191.

The facts are clear about the Rainier National Bank trust account, which was not involved in the bookkeeper's defalcations. For 3 months one client's trust account had a negative balance; Malone covered it with a deposit from his general office account. On another client account he again covered from his office account.

Several checks were drawn from a client trust fund with no identification of the client on the check nor in the trust account journal. Some checks on this account are only reflected in a cash disbursements journal as a "draw." In the same account Malone deposited funds from his personal account. The next day he signed a trust check for $1,000, to his own order, noting it as "Mary Jo account." Mary Jo is his wife.

On August 31, 1980, there was an overall trust account deficiency of $6,052.10. Malone knew of this deficiency, yet 5 days later he drew, to his own order, a check for $2,000, merely designated as a "draw." Twelve days later, on this negative balance trust account, he drew to his own order, a trust check for $2,500. There is no supporting entry or identification of client. By September 30 the trust account was short by $10,552.10. A month later the shortage was $10,011.60. Not until November 1980 did Malone deposit from his personal account the sum of $10,602.10. It is noted as "personal–Reimburse."

Over a period of 11 months Malone wrote seven trust fund checks, six to his own order, totaling $5,950. There was no client identification on the checks nor posting to the journal. One check was payable to "cash." Malone claims these withdrawals were fees, but none was posted to a client ledger.

It is no surprise that the hearing officer found these trust account deviations to be "gross, frequent, and occurred over a long period of time." Bar file, at 191.

I am rather unimpressed by the fact that no client suffered a financial loss. The simple fact of the matter was that Malone treated a trust account as a source of money which he could shift about for his own convenience, and without adequate records. One cannot escape the fact that if he had been unable to restore personal funds to cover trust account shortages, loss would have occurred. He never acted as though he understood that a lawyer must keep his hand out of the trust fund till.

More than a decade ago we reiterated our philosophy of discipline involving trust accounts. In *In re Deschane*, 84 Wn.2d 514, 516–17, 527 P.2d 683 (1974) we stated, "[t]hose few lawyers who mishandle trust funds, who fail to maintain complete records of trust funds and who fail to account and deliver funds as requested are reminded that disbarment is the usual result." In *In re Rosellini*, 97 Wn.2d 373, 377–78, 646 P.2d 122 (1982), we cited 46 of our cases where trust account violations led to disbarment.

In at least three cases, we have found compelling mitigating circumstances to not disbar. *In re Salvesen*, 94 Wn.2d 73, 614 P.2d 1264 (1980); *In re Ressa*, 94 Wn.2d 882, 621 P.2d 153 (1980); *In re Noble*, 100 Wn.2d 88, 667 P.2d 608 (1983). Two of those cases were 5 to 4 and in the third, two members concurred only in the result because of the peculiar facts.

Because of the individualized nature of the judgments which must be made in determining the measure of discipline in a particular case, it is difficult to establish clear standards of truly precedential guidance. I fear the majority in this case makes even less clear the collective judgment of this court.

I acknowledge that there *may* be sufficient mitigating facts here to stop short of disbarment. However, I am not persuaded that an attorney's ignorance of clearly established trust fund guidelines must be overwhelming as is the majority. The fact that he is of a certain chronological age and "unlikely to practice many more years" would be of little consequence to future clients if his trust accounting is like it has been in the past. Cooperation with the bar investigation is the required standard, not a mitigating factor. Lack of cooperation may be significant, cooperation is not.

The majority finds that the effect of a 60–day suspended suspension is significant. Well, it should be; these proceedings were brought about entirely by Malone's own conduct.

I would reinstate the hearing officer's recommendation of

a 6–month suspension and impose the suggested probation conditions for a period of 2 years. That is a minimal sanction for failing for years to comply with trust account rules.

ANDERSEN and GOODLOE, JJ., concur with BRACHTENBACH, J.

Reconsideration denied February 26, 1987.