94 P.3d 939 (2004)
152 Wash.2d 124
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Guillermo ROMERO, an Attorney at Law.
No. 200,009-6.
Supreme Court of Washington, En Banc.
Argued March 23, 2004.
Decided July 22, 2004.
*940 Kurt M. Bulmer, Seattle, for Appellee/Respondent.
Christine Gray, WSBA, Seattle, for Petitioner/Appellant.
CHAMBERS, J.
The Washington State Bar Association (WSBA) hearing officer and a majority of the Disciplinary Board (Board) recommend that attorney Guillermo Romero be disbarred for numerous violations of the Rules of Professional Conduct (RPC). Romero's misconduct spanned over six years and involved seven different client matters, his failure to file personal income tax returns, and his failure to cooperate with the WSBA in its investigations. Romero challenges several factual findings and the recommended sanction. He asks us to reduce his sanction from disbarment to a two-year suspension. We agree with the hearing officer and the Board that Romero should be disbarred.

FACTS

ROBERTS MATTER
Romero was appointed to represent Keith Roberts in a criminal matter. He met with Roberts's mother and requested payment to properly represent her son. She borrowed funds and paid Romero between $300 and $800.[1] Romero violated RPC 8.4(c)[2] by requesting *941 fees to represent a court appointed client. The Board recommended sanction for this misconduct is a 90-day suspension. Additionally, Romero violated RPC 1.4(b),[3] 7.1,[4] and 8.4(b)[5] by asking for costs and failing to explain that the county is obligated to pay for all costs. The recommended sanction by the Board for this misconduct is also a 90-day suspension.

LAMBERT MATTER
Romero was appointed by the court to represent Donald Lambert in a criminal matter. He met with Lambert's mother and her boyfriend at the time. Romero individually told each of them the State would not pay for the mental health expert he wanted to use. Each testified that Romero said he needed $10,000 to hire an investigator and pay for the mental health expert he wanted to use. Romero violated RPC 1.4(b), 7.1, and 8.4(b)[6] by asking for costs on behalf of a court appointed client. A 90-day suspension is recommended by the Board.

ZARATE MATTER
A public defender was assigned to represent Dusty Zarate in two separate matters. The first matter was in April 2000 regarding child rape charges. The second matter was in August 2000 regarding robbery charges. Romero was assigned to represent Zarate in the first matter and Thomas Earl was assigned to represent Zarate in the second matter. Romero also entered into a fee agreement with Zarate's father to represent his son in the first matter. Zarate's father paid Romero approximately $1,000 under the agreement. Romero violated RPC 1.4(b), 7.1, and 8.4(d) by failing to inform Zarate and his father that he was prohibited from accepting compensation for representing a court appointed client. The recommended sanction by the Board for this misconduct is a 90-day suspension. Additionally, by accepting funds from Zarate's father, Romero violated RPC 1.5(a).[7] The Board recommends another 90-day suspension for this misconduct.

SWARTZ MATTER
Romero represented Albert Swartz on a criminal matter. Swartz was ordered to pay court costs of $291.40 and a crime victim compensation assessment of $500. Swartz gave Romero two checks: one for $1,500 as final payment for Romero's services and the other for $726 for Romero to pay his court costs and assessment. Romero cashed both checks the following day. However, he did not pay Swartz's court costs and assessment for three months. Nor did he deposit Swartz's funds into a trust account. In fact, Romero did not have a trust account at the time.
A month before Romero paid Swartz's court costs and assessment, Swartz received notice from the county collections clerk, Stephanie Canterbury, that payment had not been received. After Swartz presented Canterbury with a carboncopy of the check he gave Romero, she pursued Romero for payment. Canterbury contacted Romero approximately 10 times requesting payment of the Swartz funds. He repeatedly replied with false and misleading statements regarding *942 the funds. However, he never denied having the funds. Romero's misuse of client funds violated RPC 8.4(c) for which disbarment is recommended.[8] Romero's failure to deposit the funds in to a trust account violated RPC 1.14(a).[9] Disbarment is also recommended for this misconduct. Romero's false statements to Canterbury violated RPC 8.4(c) for which a one-year suspension is recommended by the Board.

KNIGHT MATTER
Romero agreed to represent Deb Knight, who lived and worked on a South Dakota reservation at the time, in an Okanogan County family law matter. Romero appeared and filed a motion to continue the child support modification hearing. Romero failed to take further action, communicate with Knight regarding the status of the case, to respond to Knight's telephone calls or letters written on his behalf by attorneys in South Dakota, and to inform Knight and opposing counsel that he was administratively suspended for approximately a month during his representation of Knight. As a result of these failures, a default order was entered against Knight. Romero's failure to file documents requesting a child support modification violated RPC 1.2(a)[10] and 1.3[11] for which the Board recommends a 90-day suspension. Romero's failure to keep Knight reasonably informed violated RPC 1.4[12] for which another 90-day suspension is recommended by the Board.

JUAREZ MATTER
Romero was appointed to represent Robbie Juarez on a motion to withdraw his guilty plea. The court denied Juarez's motion. Although Juarez told Romero he wanted to appeal, Romero did not file a notice of appeal. Instead, Romero told Juarez that by entering a guilty plea he waived his right to appeal. Romero did not inform Juarez that he could appeal the denial of his motion to withdraw his guilty plea. Romero violated RPC 1.2(a) and 1.3 by negligently failing to file a notice of appeal for Juarez. A reprimand is the Board's recommended sanction. Romero also violated RPC 1.1[13] and 1.4(b) by negligently advising Juarez that he had no right to appeal. A reprimand is also recommended for this misconduct.

SOLORZANO MATTER
Romero was appointed to represent Gerardo Solorzano, who is a Mexican national and seasonal farm worker, on felony drug charges. Romero violated RPC 1.3 and 1.4(b) by negligently advising Solorzano that he could travel to Mexico without first obtaining necessary bail modifications and continuances. A reprimand is the Board's recommended sanction for this misconduct.

TAX RETURN MATTER
Romero failed to timely file tax returns for the years 1997, 1998, 1999, and 2000. Three days before his deposition on the subject in August 2001, Romero filed returns for tax years 1997, 1998, and 1999. The hearing officer specifically found that but for the WSBA's investigation into the matter, Romero would not have filed these returns. Romero failed to keep adequate business records of his income during those years. Thus, he was forced to estimate his annual income in order for his returns to be prepared. *943 Romero owed approximately $150,000 in back taxes, interest, and penalties. Romero's failure to file tax returns for four years violated RPC 8.4(i).[14] The Board's recommended sanction for this misconduct is a suspension ranging from 90 days to 3 years with reinstatement being conditioned upon Romero paying or compromising his back taxes, interest, and penalties.

NONCOOPERATION MATTER
The WSBA and Romero entered into a stipulation of facts regarding Romero's failure to timely respond to seven different grievances in violation of Rules for Lawyer Discipline 2.8(a).[15] Based upon the fact that Romero had previously been admonished for failing to cooperate with an WSBA investigation, a one-year suspension is recommended by the Board for this misconduct.

ANALYSIS
This court has plenary power over, and holds the ultimate responsibility for, determining the nature of lawyer discipline. In re Disciplinary Proceeding Against McKean, 148 Wash.2d 849, 861, 64 P.3d 1226 (2003). Certain responsibilities have been delegated to the WSBA. Id. Findings of fact, conclusions of law, and recommended sanctions are made to the Board by a hearing officer. Id. After reviewing the hearing officer's decision, the Board enters an order, which may be appealed to this court. Id.

CHALLENGES TO FACTUAL FINDINGS AND CONCLUSIONS OF LAW
Generally, we do not disturb findings of fact that have been unanimously approved by the Board if the facts are supported by a clear preponderance of the evidence. In re McKean, 148 Wash.2d at 861, 64 P.3d 1226. Nor do we substitute our own evaluation of the credibility of witnesses for that of the hearing officer's. In re Disciplinary Proceeding Against Miller, 149 Wash.2d 262, 277, 66 P.3d 1069 (2003). Additionally, "challenges to the hearing officer's conclusions of law will succeed only if conclusions are not supported by the findings of fact." In re Disciplinary Proceeding Against Anschell, 149 Wash.2d 484, 504, 69 P.3d 844 (2003) (citing In re Disciplinary Proceeding Against Boelter, 139 Wash.2d 81, 90, 985 P.2d 328 (1999)).
Except for one finding in the Lambert matter, Romero does not challenge the evidentiary support for the challenged findings. Romero correctly notes that Lambert did not testify. We agree there is no evidence in the record which supports the finding that he failed to tell Lambert the State was responsible to pay for all reasonably necessary expenses. Contra Finding of Fact at ¶¶ 3.39-.40. The remainder of Romero's challenges to the factual findings and conclusions of law are without merit because he merely reargues explanations and versions of the facts rejected by the hearing officer and the Board. See In re McKean, 148 Wash.2d at 861, 64 P.3d 1226.

PROPORTIONALITY (SWARTZ MATTER)
Proportionality is an important factor to consider because it aids in maintaining consistency and fundamental fairness. In re Disciplinary Proceeding Against Kuvara, 149 Wash.2d 237, 258, 66 P.3d 1057 (2003). The presumptive sanction "might not be adopted where it departs significantly from sanctions imposed in similar cases." In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 95, 667 P.2d 608 (1983). Romero claims that "[e]ven if the facts as asserted by the hearing officer are accepted as true, ... an isolated instance of using a client's $726 for 98 days" does not merit disbarment. Opening Br. of Resp't at 29. We agree. If Romero's only misconduct was the misuse of Swartz's funds, disbarment would not be warranted.
*944 Disbarment significantly departs from the sanction found appropriate for similar misconduct. We imposed a two-year suspension on an attorney who used up to $30,000 of client funds for almost a year. In re Disciplinary Proceeding Against Tasker, 141 Wash.2d 557, 572, 9 P.3d 822 (2000). We also imposed a two-year suspension on an attorney whose misuse of client funds we described as "extremely serious .... not only in nature but in number." In re Disciplinary Proceeding Against Salvesen, 94 Wash.2d 73, 76, 79, 614 P.2d 1264 (1980). Additionally, we suspended an attorney's 60-day suspension for 10 trust account violations which spanned four years. In re Disciplinary Proceeding Against Malone, 107 Wash.2d 263, 264, 728 P.2d 1029 (1986). In all three cases, we found the fact that no client lost any trust funds a major mitigating factor. In re Tasker, 141 Wash.2d at 569, 9 P.3d 822; In re Malone, 107 Wash.2d at 265, 728 P.2d 1029; In re Salvesen, 94 Wash.2d at 77, 614 P.2d 1264. Similarly, in this case, Romero's client did not lose any trust funds. Romero's failure to put client funds in trust and make a timely payment on behalf of his client is less egregious than Tasker's, Salvesen's, and Malone's misuse of client funds. Accordingly, Romero's misuse of Swartz's funds alone "would not merit the sanction of disbarment." See In re Disciplinary Proceeding Against Petersen, 120 Wash.2d 833, 873, 846 P.2d 1330 (1993).

APPROPRIATE SANCTION
We have adopted the American Bar Association's Standards For Imposing Lawyer Sanctions (1991) (ABA Standards) as a guide to determine appropriate sanctions. In re McKean, 148 Wash.2d at 868, 64 P.3d 1226. First, the presumptive sentence is determined by considering the ethical duty violated, the lawyer's mental state, and the extent of actual or potential harm. Id.; see also ABA STANDARDS std. 3.0(a)-(c). Second, mitigating and aggravating factors are considered to determine whether they affect the type or length of the presumptive sanction. Id.; see also ABA STANDARDS std. 3.0(d). Third, the factors of proportionality and degree of unanimity among board members are considered. In re Kuvara, 149 Wash.2d at 259, 66 P.3d 1057. The presumptive sanction is compared with sanctions imposed in similar cases to determine proportionality. Id. at 257-58, 66 P.3d 1057. We hesitate to reject a unanimous recommendation without clear reasons for doing so. Id. at 259, 66 P.3d 1057.
The ABA Standards do not directly set forth a presumptive sanction for multiple charges of misconduct. In re Petersen, 120 Wash.2d at 854, 846 P.2d 1330. However, the ABA Standards do consider multiple charges an aggravating factor and state that the "`ultimate sanction imposed should be at least consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct.'" Id. (emphasis added) (quoting ABA STANDARDS at 6).
With the exception of disbarment for the misuse of Swartz's funds, Romero does not challenge the presumptive sanctions for his violations. Suspension is the presumptive sanction for many of Romero's violations. The term of those suspensions ranges from 90 days to 3 years.[16] The hearing officer did not find, and Romero concedes the lack of, any mitigating factors. Therefore, we consider whether the depth, breadth, and cumulative nature of the misconduct should impact the ultimate sanction.
Romero argues that when presented with multiple acts of misconduct, we should be limited to the most severe sanction for any single act of misconduct. He argues that we should not consider the aggregate effect of multiple acts of misconduct. We disagree.
Additionally, Romero argues that we should disregard or limit our consideration of several aggravating factors. We disagree. Fair disciplinary sanctions require consideration of aggravating and mitigating factors because "[e]ach disciplinary case involves unique facts and circumstances." ABA STANDARD std. 9.1 cmt. Accordingly, we do not consider aggravating and mitigating factors in a vacuum. Rather, we view the factors to consider the totality of the *945 circumstances and fashion an appropriate sanction for the unique facts and circumstances of each case.
Romero's challenges to the hearing officer's findings that he acted with a dishonest and selfish motive and that his court appointed clients were vulnerable are meritless. First, Romero concedes there is an element of selfish motive for requesting money from court appointed clients. Second, Romero did not challenge the hearing officer's finding that he would not have filed his tax returns if the WSBA had not investigated the matter. Thus, it is a verity on appeal[17] and supports a finding that he was motivated by a desire to keep money from the government. While Romero correctly notes that we are hesitant to classify victims as being vulnerable, there is sufficient evidence to support the hearing officer's finding that in this case particular clients of Romero's were vulnerable.
Romero engaged in many different kinds of misconduct, involving many different clients, over a prolonged period of time. In this case, we find the aggregate nature of the misconduct adds cumulative weight to the aggravating factors, which justifies an increase in sanction from suspension to disbarment.

DUE PROCESS
Whether unfitness to practice law must be specifically alleged before the sanction of disbarment can be imposed without offending notions of due process is an issue of first impression in Washington. An attorney has a cognizable due process right to be notified of clear and specific charges and to be afforded an opportunity to anticipate, prepare, and present a defense. In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); accord In re Disciplinary Action Against Gherity, 673 N.W.2d 474 (Minn.2004).
We have consistently and repeatedly adhered to the principle that presumptive sanctions may be increased due to aggravating factors. See, e.g., In re McKean, 148 Wash.2d at 868, 64 P.3d 1226; accord ABA STANDARD std. 3.0(d). Imposition of the appropriate sanction under the ABA Standards does not violate an attorney's due process rights. Cf. Gherity, 673 N.W.2d at 479 (holding disbarment does not violate due process where "appropriate discipline" is sought and the rules of professional responsibility include disbarment as a sanction where appropriate). In this case, the charges against Romero were sufficiently clear that he was afforded an opportunity to prepare and present a defense to each charge. Disbarment is the appropriate sanction based upon the existence and cumulative weight of numerous and serious aggravating factors. We conclude Romero's due process rights are not violated by imposition of the appropriate sanction under these circumstances.

CONCLUSION
Except for the findings regarding statements made to Lambert by Romero, we affirm the findings and conclusions adopted by the Board. We reverse the conclusion that Romero's misuse of client funds warrants disbarment. However, because of the depth and breadth of his misconduct and the cumulative weight of numerous aggravating factors, we affirm the Board's recommended sanction and order Romero's disbarment.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, BRIDGE, OWENS, FAIRHURST, JJ., and THOMPSON, J. Pro Tem.
NOTES
[1] After the trial court informed Romero that it was inconsistent with the public defender contract to accept compensation from a court appointed client, he transferred the funds paid by Roberts's mother to the account of her brother, who had retained Romero on another matter.
[2] "It is professional misconduct for a lawyer to: ... [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." RPC 8.4(c).
[3] "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." RPC 1.4(b).
[4] "A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services." RPC 7.1.
[5] This conclusion seems to include a scrivener's error because the complaint alleged a violation of RPC 8.4(d) for this misconduct. RPC 8.4(b) applies when a lawyer commits a crime, and RPC 8.4(d) applies when a lawyer "[e]ngage[s] in conduct that is prejudicial to the administration of justice." RPC 8.4(d).
[6] This conclusion seems to include the same scrivener's error as found in the Roberts matter. The complaint alleged a violation of RPC 8.4(d) for this misconduct.
[7] RPC 1.5(a) requires that a lawyer's fees "be reasonable." Because Zarate was a court appointed client, any fee accepted was unreasonable.
[8] A three member minority of the Board recommended a three-year suspension, rather than disbarment, for Romero's misuse of Swartz's funds.
[9] RPC 1.14(a) requires "[a]ll funds of clients paid to a lawyer or law firm ... shall be deposited in one or more identifiable interest-bearing trust accounts."
[10] RPC 1.2(a) requires a lawyer to "abide by a client's decisions concerning the objectives of representation ... and [to] consult with the client as to the means by which they are to be pursued."
[11] "A lawyer shall act with reasonable diligence and promptness in representing a client." RPC 1.3.
[12] "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." RPC 1.4(a). "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." RPC 1.4(b).
[13] RPC 1.1 requires a lawyer to "provide competent representation to a client."
[14] RPC 8.4(i) states that it is professional misconduct for a lawyer to "[c]ommit any act involving moral turpitude, ... or other act which reflects disregard for the rule of law, whether the same be committed in the course of his or her conduct as a lawyer, or otherwise."
[15] Superseded by Rules for Enforcement of Lawyer Conduct (ELC) effective October 1, 2002.
[16] The maximum term of a suspension is three years. ELC 13.3(a).
[17] In re Boelter, 139 Wash.2d at 96 n. 5, 985 P.2d 328.