[No. 200,096-7.   En Banc.]
Argued October 28, 2004.   Decided March 17, 2005.

*In the Matter of the Disciplinary Proceeding Against* ALEC
M. SCHWIMMER, *an Attorney at Law.*

J.M. JOHNSON, J., did not participate in the disposition of this case.

*Alec M. Schwimmer*, pro se.
*Jean K. McElroy*, for the Bar Association.

¶1 ALEXANDER, C.J. — The Washington State Bar Association (WSBA) obtained discretionary review of a decision of the Disciplinary Board in which that board adopted a hearing officer's recommendation that Alec Schwimmer, attorney at law, be suspended for a period of two years for numerous acts of professional misconduct. The WSBA contends here, as it has throughout, that Schwimmer should be disbarred. We agree that disbarment is the appropriate sanction.

I

¶2 On December 12, 2002, the WSBA filed a formal complaint against Alec Schwimmer. It alleged that Schwimmer committed 11 acts of professional misconduct. The allegations were as follows:

¶3 Count 1: "By failing to keep his client Mr. Juvonen adequately informed about the status of his legal proceed-

ings and/or failing to promptly comply with reasonable requests for information, Respondent violated RPC 1.4(a)." Decision Papers (DP) at 38.

¶4 Count 2: "By failing to appear for the trial date on May 30, 2001, Respondent violated RPC 1.3, RPC 3.2, and/or RPC 8.4(d)." *Id.*

¶5 Count 3: "By making misrepresentations to the court during the June 5, 2001 hearing, Respondent violated RPC 3.3(a)(1), RPC 8.4(c), and/or RPC 8.4(d)." *Id.*

¶6 Count 4: "By making misrepresentations at his July 16, 2001 deposition, Respondent violated RPC 8.4(c) and/or former RLD 2.8." *Id.*

¶7 Count 5: "By failing to maintain complete records of client funds and/or failing to render appropriate accounts to his clients about their funds, Respondent violated RPC 1.14(b)(3)." *Id.* at 44.

¶8 Count 6: "By depositing his own funds into his IOLTA [Interest on Lawyer Trust Account] trust account, Respondent violated RPC 1.14(a)." *Id.*

¶9 Count 7: "By failing to promptly notify his client PRMC [Prairie Ridge Maintenance Company] of the receipt of funds belonging to PRMC, Respondent violated RPC 1.14(b)(2) and/or RPC 1.4." *Id.* at 44-45.

¶10 Count 8: "By failing to promptly pay or deliver to his client as requested the funds PRMC was entitled to receive, Respondent violated RPC 1.14(b)(4) and/or RPC 1.3." *Id.* at 45.

¶11 Count 9: "By misappropriating client funds and/or committing the crime of theft with respect to PRMC's money in the Bergdahl/McDonald matter, Respondent violated RPC 8.4(b), RPC 8.4(c), and/or former RLD 1.1(a) (currently RPC 8.4(i))." *Id.*

¶12 Count 10: "By being dishonest or deceitful in his testimony at his November 6, 2001 deposition, including but not limited to testimony regarding PRMC's Bergdahl/McDonald settlement money, Respondent violated RPC

8.4(c), RPC 8.4(d), and/or former RLD 1.1(a) (currently RPC 8.4(i))." *Id.*

¶13 Count 11: "By failing to provide a timely written response to the requests for information regarding his trust account overdraft, by failing to provide records relating to his trust account, and/or by failing to provide the file and releases requested at the conclusion of his deposition, Respondent violated former RLD 1.1(j) (currently RPC 8.4(*l*)) by violating RLD 2.8(a) (currently ELC 5.3(e))." *Id.*

¶14 Prior to a disciplinary hearing, which was held on June 11, 2003, Schwimmer and the WSBA stipulated that Schwimmer violated the Rules of Professional Conduct as set forth in counts 1 through 11 of the formal complaint. They also stipulated to certain facts surrounding each count. Consequently, the hearing focused entirely on the issue of the sanction to be imposed. Schwimmer was the only person who testified at this hearing and he reiterated there that he did not dispute the allegations in the complaint. The hearing officer thereafter entered findings of fact, which included all of the stipulated facts.

¶15 The hearing officer also made findings and conclusions regarding the appropriate sanction. Although the hearing officer determined that the presumptive sanction for count 9 was disbarment, he concluded that the presumptive sanction was mitigated by the following: (1) Schwimmer made a timely good faith effort to rectify the consequences of his misconduct by reimbursing his client, PRMC, within a month of the time the client requested he do so; (2) Schwimmer had no prior record of discipline; (3) Schwimmer was experiencing personal and emotional problems around the time the misconduct alleged in count 9 occurred; (4) the client did not complain to the WSBA about the misappropriation; and (5) Schwimmer was abusing alcohol and drugs during the time material to the misconduct alleged in count 9 and that he was physically and mentally impaired during this time. The hearing officer also concluded that Schwimmer "knowingly misused client property rather than intentionally stole client property." *Id.*

at 66. The hearing officer ultimately recommended to the Disciplinary Board that Schwimmer be suspended from the practice of law for two years followed by a two-year period of probation.

¶16 Without additional comment, a majority of the Disciplinary Board adopted the hearing officer's findings of fact, conclusions of law, and recommendation. Five members of the 12 member board dissented, expressing their opinion that Schwimmer should be disbarred. The dissenters set forth their view that this court has rejected alcohol and drug use as an extraordinary mitigating factor. They also reasoned: "By not disbarring Mr. Schwimmer the message we send to both the public and the bar is that stealing clients['] funds from your trust account and that lying under oath to hide what you have done can be mitigated by drug and alcohol abuse." *Id.* at 162.

¶17 The WSBA sought discretionary review of the Disciplinary Board's decision in this court pursuant to Rules for Enforcement of Lawyer Conduct (ELC) 12.4, arguing, as it had to the hearing officer and Disciplinary Board, that Schwimmer should be disbarred rather than suspended.[1] We granted review.

## II

¶18 Although this court gives great weight to the conclusions of the Disciplinary Board regarding the recommended sanction, this court "retains ultimate authority for determining the appropriate sanction for an attorney's misconduct." *In re Disciplinary Proceeding Against Kagele,* 149 Wn.2d 793, 816, 72 P.3d 1067 (2003) (citing *In re Disciplinary Proceeding Against Haskell,* 136 Wn.2d 300,

---

[1] ELC 12.4(a) provides that this court "accepts discretionary review only if:

"(1) the Board's decision is in conflict with a Supreme Court decision;

"(2) a significant question of law is involved;

"(3) there is no substantial evidence in the record to support a material finding of fact on which the Board's decision is based; or

"(4) the petition involves an issue of substantial public interest that the Court should determine."

317, 962 P.2d 813 (1998)). Initially, the hearing officer makes findings of fact, conclusions of law, and recommendation to the Disciplinary Board. The Board is then free to adopt, modify, or reverse the hearing officer's findings, conclusions, or recommendation. *In re Disciplinary Proceeding Against Carmick*, 146 Wn.2d 582, 593-94, 48 P.3d 311 (2002). This court accepts as true all findings of fact that are not challenged on appeal. *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 759, 801 P.2d 962 (1990).

## III

■ ■ ¶19 In determining the sanction to be imposed for misconduct, we utilize the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) as a basic, but not conclusive, guide. Under these standards, we first determine the presumptive sanction by considering (1) the ethical duty that the attorney violated, (2) the attorney's mental state, and (3) the extent of the actual or potential injury caused by the attorney's misconduct. *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 252, 66 P.3d 1057 (2003) (citing *In re Disciplinary Proceeding Against Halverson*, 140 Wn.2d 475, 492, 998 P.2d 833 (2000); STANDARDS std. 3.0(a)-(c)). We next determine whether there are any aggravating or mitigating factors that may heighten or reduce the presumptive sanction. *Halverson*, 140 Wn.2d at 493; STANDARDS std. 3.0(d)). Finally, if raised by the attorney who is being disciplined, we determine the appropriateness of the sanction by considering what have become known as the *Noble* factors. *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 95-96, 667 P.2d 608 (1983).

### A. Presumptive Sanction

■ ¶20 In determining the appropriate sanction for Schwimmer's professional misconduct, we focus on count 9, which is the most serious instance of misconduct. We do

that because the " ' "ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations." ' " *In re Disciplinary Proceeding Against Romero*, 152 Wn.2d 124, 135, 94 P.3d 939 (2004) (quoting *In re Disciplinary Proceeding Against Petersen*, 120 Wn.2d 833, 854, 846 P.2d 1330 (1993) (quoting STANDARDS at 6)).

¶21 As noted above, Schwimmer stipulated that he committed the misconduct alleged in count 9 and that this misconduct amounted to a violation of RPC 8.4(b), RPC 8.4(c), and/or former RLD 1.1(a) (currently RPC 8.4(i)). In addition, he stipulated to the following facts regarding count 9:

> 30. On or about October 27, 2000, Respondent deposited to his IOLTA account a check for $5,606.16 made payable to Prairie Ridge Maintenance Company c/o Respondent as attorney.
>
> . . . .
>
> 32. The $5,606.16 deposit was in fact money belonging to Respondent's client PRMC, and reflected a settlement payment in *PRMC v. McDonald/Bergdahl*. Respondent knowingly or intentionally did not notify PRMC of his receipt of those funds at the time that he received them[.]
>
> . . . .
>
> 34. Between October 27 and November 28, 2000, Respondent intentionally misappropriated over $2,500 in funds belonging to PRMC by writing 21 checks out of his IOLTA account, for the benefit of himself or others (not PRMC), without authorization from PRMC.

DP at 54-55.

¶22 Notwithstanding Schwimmer's stipulation to the charge that he misappropriated client funds and the hearing officer's finding of fact that he did so intentionally, the hearing officer concluded that Schwimmer merely "knowingly misused" client funds. *Id.* at 66. As noted above, that determination contributed to the hearing officer's recommendation that Schwimmer be suspended rather than

disbarred, the officer stating that "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property." *Id.* at 67.

¶23 We believe there are several flaws in this reasoning of the hearing officer that were apparently adopted by the Disciplinary Board. The most obvious flaw is that the conclusion that Schwimmer "knowingly misused" client funds conflicts with the agreed upon finding that he intentionally misappropriated client funds. Furthermore, even if the conclusion that he knowingly misused client funds rather than intentionally misappropriating them is correct, we are of the view that the distinction is of no significance. This court has indicated that "a lawyer's failure to preserve the integrity of client funds leads to disbarment, absent extraordinary mitigating circumstances." *In re Disciplinary Proceeding Against Rentel*, 107 Wn.2d 276, 286, 729 P.2d 615 (1986) (citing *Noble*, 100 Wn.2d at 92; *In re Disciplinary Proceeding Against Moynihan*, 97 Wn.2d 237, 238, 643 P.2d 439 (1982)); *see also In re Disciplinary Proceeding Against Johnson*, 114 Wn.2d 737, 748, 790 P.2d 1227 (1990).

¶24 Finally, we hold that the hearing officer's conclusion that the admitted misconduct was knowing misuse rather than intentional misappropriation rests on a faulty premise. The hearing officer apparently reached that conclusion because the client's money was not, in his view, misused for a "significant period of time," thus not foreclosing the possibility that the money would be returned. DP at 66. The hearing officer noted, in that regard, that Schwimmer reimbursed his client after a demand for reimbursement was made. This reasoning is unsatisfactory because, regardless of the characterization of Schwimmer's mental state, his conduct constitutes embezzlement, which does not require an intent to permanently deprive. Rather, embezzlement[2] "occurs where property that is lawfully in

---

[2] What is normally referred to as embezzlement is a form of theft. *See* RCW 9A.56.020(1)(a) (wrongfully obtaining or exerting unauthorized control of another's property). The legislature has indicated that " '[w]rongfully obtains' " or " 'exerts unauthorized control' " means:

the taker's possession is fraudulently or unlawfully appropriated by the taker." *State v. Ager*, 128 Wn.2d 85, 91, 904 P.2d 715 (1995). We have noted that "[u]nlike theft by taking, embezzlement involves a violation of trust and does not require proof of intent to permanently deprive the owner of the property taken." *Id.*; *see also State v. Linden*, 171 Wash. 92, 112, 17 P.2d 635 (1932) (noting that in a relationship or an association that involves trust, "it [is] no defense that the defendant, at the time the money was appropriated, intended to restore or repay the same at some future time.").

¶25 Any attorney who dips into a trust account could seemingly rationalize his or her conduct by saying that there was no intent to permanently deprive the client of the money and that the attorney was merely borrowing the funds, which would be paid back perhaps out of future fees from the client. Even if an attorney reimburses the client for misappropriated funds, the repayment does not eviscerate his or her ethical violation. Indeed, we have ordered disbarment of attorneys who have repaid part or all of misappropriated funds. *See In re Disciplinary Proceeding Against Petersen*, 120 Wn.2d 833, 846 P.2d 1330 (1993); *Johnson*, 114 Wn.2d 737; *Rentel*, 107 Wn.2d 276.

¶26 In sum, we reject the determination of the hearing officer and Disciplinary Board that Schwimmer only knowingly misused client funds, rather than intentionally misappropriated the money. We also conclude that the distinction between knowing misuse and intentional misappropriation is immaterial. The plain fact is that Schwimmer's ethical lapse was serious, and it was compounded when Schwimmer lied about his misconduct under oath at a deposition on November 6, 2001, which was the

---

"(b) Having any property or services in one's possession, custody or control as . . . attorney . . .

"(c) . . . to secrete, withhold, or appropriate the same to his or her use or to the use of any person other than the true owner or person entitled thereto." RCW 9A.56.010(19)(b), (c).

substance of count 10.[3] For reasons stated above, we reject the conclusion that Schwimmer merely knowingly misused client funds and conclude, instead, that he intentionally misappropriated client funds. The presumptive sanction for this misconduct is disbarment. STANDARDS std. 4.11; *see also Rentel*, 107 Wn.2d at 286.

## B. Aggravating and Mitigating Factors

¶27 There are no extraordinary mitigating factors present in this case. Although Schwimmer has indicated that he has little recollection of actually taking client funds and that he had addiction problems with alcohol and drugs, this does not mitigate his professional misconduct.[4] *See Johnson*, 114 Wn.2d at 753 (concluding that chronic alcoholism is not an extraordinary mitigating factor); *Rentel*, 107 Wn.2d at 287-88 (concluding that drug and alcohol addictions are not extraordinary mitigating factors). Indeed, the hearing officer conceded this point in his findings of fact, conclusions of law, and recommendation when he said: "The Washington State Supreme Court has held that alcoholism and drug addiction are not extraordinary miti-

---

[3] The facts relating to count 10 show the following:

"31. Respondent knowingly or intentionally testified falsely at his deposition on November 6, 2001 that the deposit of $5,606.16 described in paragraph 30 was money that he received as an earned fee on a client matter (John Responte matter), from his client's father. Respondent further knowingly or intentionally testified falsely that he didn't know why the $5,606.16 deposit had been deposited to his trust account, because it was an earned fee and should have been deposited to his business account.

". . . .

"33. Respondent knowingly or intentionally testified falsely at his deposition on November 6, 2001 that he paid some costs out of the Bergdahl/McDonald "settlement" with checks written after October 27, 2000.

". . . .

"41. Respondent knowingly or intentionally testified falsely at his deposition on November 6, 2001 that the two $2,400 deposits on December 20, 2001, were money for PRMC from the Bergdahl/McDonald matter." DP at 54-55.

[4] It is notable that Schwimmer failed to present any expert testimony to support his claim of lack of recollection or alcohol and drug dependency. *See In re Disciplinary Proceeding Against Cohen*, 150 Wn.2d 744, 756-57, 82 P.3d 224 (2004) (requiring expert testimony in disciplinary proceedings to establish medical facts).

gating circumstances warranting a sanction less than disbarment for conversion of client funds." DP at 65-66 (citing *In re Disciplinary Proceeding Against McLendon*, 120 Wn.2d 761, 771, 845 P.2d 1006 (1993)). The fact that Schwimmer had no prior disciplinary record is also not significant. We say that because the misconduct charged in count 9 is serious and an attorney cannot shield himself or herself from the consequences of committing a serious ethical violation simply because it is his or her first offense. Finally, it is of no importance that none of Schwimmer's clients complained about his misappropriation of their funds. "[F]ailure of [an] injured client to complain" is not a factor that should be considered as either aggravating or mitigating. STANDARDS std. 9.4(f).

¶28 On the other hand, the following aggravating factors are present here: (1) submission of false evidence, false statements, or other deceptive practices during the disciplinary process (findings of fact 31, 33, 41); (2) a pattern of misconduct (finding of fact 34); and (3) dishonest or selfish motive (finding of fact 34). DP at 54-55. In addition, there are multiple offenses which reinforce the conclusion that Schwimmer should be disbarred.

¶29 Most significant among the other acts is Schwimmer's lying to a superior court judge, the misconduct charged in count 3. In finding of fact 15, the hearing officer found that Schwimmer "knowingly or intentionally made false or misleading representations to the court about his physical and mental condition, and about efforts and attempts he made to obtain treatment for alcohol and/or drug abuse." *Id.* at 52. Finding of fact 16 recites the false or misleading misrepresentations, made by Schwimmer, as follows:

   a.   That Respondent had enrolled himself in a drug or alcohol abuse detoxification program at Tacoma General Hospital.
   b.   That Respondent had been "in Oregon in the hospital for a week and a half" during the period under discussion (May of 2001).

*Id.* It is apparent that Schwimmer lied to a superior court judge to excuse his failure to appear for his client at an earlier scheduled criminal trial. The fact that he did not recall lying and that he was using alcohol and drugs at the time does not provide mitigation any more than it did to his misappropriation of client funds.

### C. *Noble* Factors

¶30 Although we do not lightly depart from a recommendation made by the Disciplinary Board, we will depart from it if we are persuaded that the sanction is inappropriate in light of what has become known as the *Noble* factors. Following our decision in *Kuvara*, there are two *Noble* factors that we must consider: (1) proportionality of the sanction to the misconduct and (2) the extent of agreement among the members of the Disciplinary Board. *Kuvara*, 149 Wn.2d at 259.

¶31 Schwimmer points only to *In re Disciplinary Proceeding Against Tasker*, 141 Wn.2d 557, 9 P.3d 822 (2000), to support his claim of disproportionality. However, *Tasker* is distinguishable from the present case. In *Tasker*, we were faced with a situation where the attorney commingled his funds with client funds and knowingly used funds from that account. Unlike the instant case, there was no allegation that the attorney fraudulently stole client funds. Furthermore, we concluded that there was such a "substantial . . . delay in prosecution," and a compelling showing of rehabilitation that disbarment was inappropriate. *Id.* at 570. Schwimmer has shown neither the existence of substantial delay in the disciplinary proceeding nor compelling rehabilitation on his part.

¶32 While there is reluctance to reject the recommendation of a unanimous Disciplinary Board, we are less hesitant to reject the recommendation of a divided board. *Noble*, 100 Wn.2d at 96. Here, as we have observed above, the Disciplinary Board was split, with five of its members favoring disbarment. We, therefore, accord its recommen-

dation less deference and conclude that the Disciplinary Board's recommendation of a two-year suspension should be rejected.

## IV

¶33 Schwimmer concedes that he intentionally misappropriated client funds and lied about it during the WSBA's investigation of the matter. This misconduct, alone, warrants disbarment. Although we have made little or no mention of any of the other acts of misconduct admitted by Schwimmer, the existence of these acts reinforces our ultimate conclusion.

¶34 We, therefore, order that Alec Schwimmer be disbarred from the practice of law and that his name be stricken from the roll of attorneys in this state.

C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., and IRELAND, J. Pro Tem., concur.