168 P.3d 408 (2007)
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Fernando PEREZ-PENA, Attorney at Law.
No. 200,428-8.
Supreme Court of Washington, En Banc.
Argued May 17, 2007.
Decided October 4, 2007.
*410 Anthony Savage, Attorney at Law, Seattle, WA, for Petitioner.
M. Craig Bray, Washington State Bar Association, Seattle, WA, for Respondent.
BRIDGE, J.
¶ 1 Attorney Fernando Perez-Pena appeals from the Washington State Bar Association Disciplinary Board's (Board) recommendation that he be suspended from the practice of law for six months. The Washington State Bar Association's (WSBA) hearing officer concluded that Perez-Pena had *411 committed misconduct by assaulting Cecelia Cameron Garcia in the course of representing Cecelia and her husband, Arturo. The hearing officer found that the second count against Perez-Pena, that he had failed to return an unearned fee, was not proved. The hearing officer recommended that Perez-Pena be admonished. In a unanimous decision, the Board amended the hearing officer's recommended sanction on count 1 and reversed the ultimate finding on count 2. The Board recommended a three-month suspension for the assault, to run concurrently with a six-month suspension for Perez-Pena's failure to return the Garcias' money. It also recommended that reinstatement be conditioned on making restitution. Perez-Pena appealed to this court, arguing that the hearing officer improperly relied on his assault conviction as conclusive evidence that he committed the act, even though the conviction was vacated, and that even though he has failed to return the Garcias' money, an admonishment is sufficient. The WSBA argues that the six-month suspension and restitution requirement should be imposed. While we agree in large part with the Board's analysis, we impose a 60-day suspension, with reinstatement conditioned upon Perez-Pena fulfilling the civil judgment against him.

I

Facts and Procedural History
¶ 2 Fernando Perez-Pena was admitted to practice in Washington State in 1973.[1] He has a general practice, which includes immigration law. On March 22, 2001, Cecelia and Arturo Garcia met with Perez-Pena, seeking his help in an immigration matter. They agreed to a fee of $2,000, which the Garcias paid via check. There was no written fee agreement.
¶ 3 The Garcias were concerned about paying the money, which they had borrowed from Mrs. Garcia's mother. They were also concerned (unjustifiably) about whether Perez-Pena was actually a lawyer, since they received some bad advice, apparently from a nonlawyer, that Perez-Pena had given them "wrong" forms and that he did not give them the required medical forms. Finding of Fact (FOF) 5. This information was not accurate. Additionally, the Garcias could not find a financial sponsor for Mr. Garcia.
¶ 4 Presumably due to these concerns, the Garcias decided a few days after their first meeting not to proceed with the matter and asked Perez-Pena for a refund. He agreed to return $1,500, charging a flat fee of $500 for the work he had done, and gave the Garcias a check in that amount. However, the Garcias were unable to deposit the check because their bank account had only Mrs. Garcia's maiden name on it. Perez-Pena had possession of the Garcias' marriage certificate, so they went back to his office to obtain the certificate. Their demeanor at Perez-Pena's office was hostile, and after they obtained the certificate they threatened lawsuits and WSBA complaints.
¶ 5 Based on the threats and what he perceived as a lack of appreciation for his agreement to refund the money, Perez-Pena stopped payment on the check. He did not notify the Garcias, and the check bounced. After a series of hostile dealings, letters, and phone conversations, Perez-Pena agreed to give the Garcias a refund of $1,600 if they agreed to sign releases of liability.[2] The Garcias agreed, and on March 31, 2001 they went to Perez-Pena's office with the releases and the bounced check. Mr. Garcia went into the office, where he was disruptive. Id. Perez-Pena called the police, and Mr. Garcia left.
¶ 6 Perez-Pena ultimately agreed to go to his bank to obtain a cashier's check for the Garcias, and the parties met to exchange the documents. During the exchange, Mrs. Garcia tried to keep the check and grab the *412 releases back from Perez-Pena. Perez-Pena pushed or hit Mrs. Garcia, who ended up with the check but tore the release document in half. Perez-Pena thereafter reported the check stolen, and it bounced.
¶ 7 The city of Seattle charged Perez-Pena with misdemeanor assault, and a jury convicted him on January 30, 2002. On February 28, 2002, the court granted Perez-Pena a deferred sentence. Perez-Pena completed the conditions of his deferred sentence, and on July 3, 2003 the court vacated his judgment and sentence and dismissed the complaint. On May 9, 2005, in anticipation of his disciplinary proceedings, Perez-Pena filed a motion to clarify the docket entries of July 3, 2003, asking, inter alia, for the court to vacate the jury verdict. The court clarified that it had vacated the judgment and sentence and dismissed the complaint but, notably, it would not vacate the jury verdict.
¶ 8 On May 29, 2002, the Garcias filed a claim against Perez-Pena in small claims court for the unearned portion of the fee they paid to Perez-Pena. The court awarded the Garcias $1,431.45, id., which Perez-Pena has admittedly not paid.
¶ 9 On July 19, 2005, WSBA filed a formal complaint against Perez-Pena, alleging that he committed a criminal act that reflected adversely on his fitness to practice, in violation of RPC 8.4(b),[3] and/or committed an unjustified act of assault, in violation of RPC 8.4(i)[4] (count 1); and that he failed to refund an unearned fee, in violation of former RPC 1.15(d)[5] (count 2). On March 14, 2006, Hearing Officer James C. Lawrie held the disciplinary hearing. On March 22, 2006, he filed his findings of fact and conclusions of law with the Board. He found that count 1 had been proved, and that an admonition was the appropriate sanction. He dismissed count 2, finding that the fee was earned at the time of payment and that "[t]he clients obtained the core benefits of knowledge and procedures (with some initial forms)." Clerk's Papers (CP) at 81-83.
¶ 10 On October 12, 2006, in a unanimous decision, the Board amended the hearing officer's decision. It found that even though the resulting injury from the assault was minor, the incident "seriously reflects adversely on [Perez-Pena]'s fitness as to demeanor and handling of complex emotional client[] confrontations." FOF 20. The Board recommended a three-month suspension for count 1. Contrary to the decision of the hearing officer, the Board found that count 2 was proved. It found that the record did not contain a written fee agreement or other evidence to support finding a nonrefundable fee and that Perez-Pena had done only three or four hours of labor on the case. Therefore, because Perez-Pena "repeatedly and intentionally prevented his clients from recovering the unearned portion of the fee," Decision Papers (DP) at 20, the Board recommended a six-month suspension for count 2. DP at 22. It also recommended that Perez-Pena be required to satisfy the civil judgment within three months of this court's order. Perez-Pena now appeals this recommendation.

II

Analysis

Standard of Review
¶ 11 This court is ultimately responsible for lawyer discipline in the state of Washington and holds plenary authority in that regard. In re Disciplinary Proceeding Against Whitney, 155 Wash.2d 451, 461, 120 P.3d 550 (2005). We have the inherent power to interpret the rules of lawyer discipline. In re Disciplinary Proceeding Against Haley, 156 Wash.2d 324, 333, 126 P.3d 1262 (2006). Although we make the final decision *413 regarding the proper sanction, a hearing officer makes findings of fact and conclusions of law and recommends a sanction to the Board. Whitney, 155 Wash.2d at 461, 120 P.3d 550. The Board may then adopt, modify, or reverse the findings, conclusions, and/or recommendations. Id. Unchallenged findings of fact made by the hearing officer and unchanged by the Board are viewed as verities on appeal. Id. We will uphold challenged findings of fact if they are supported by a clear preponderance of the evidence. Id. We review conclusions of law de novo. Id.

Misconduct

Count 1  Assault
¶ 12 Perez-Pena does not specifically challenge the findings of fact for count 1 but instead argues that the hearing officer erred in relying upon his municipal court conviction for assault as conclusive evidence of his guilt of that crime. See Fernando Perez-Pena's Br. in Opp'n to Decision of the Disciplinary Bd. of WSBA (Br. in Opp'n) at 8. ELC 10.14(c) states that if a formal complaint against an attorney is based upon criminal conduct of which the attorney has been convicted, then "the court record of the conviction is conclusive evidence at the disciplinary hearing of the respondent's guilt of the crime and violation of the statute on which the conviction was based." However, RCW 9.96.060(3) provides that
[o]nce the court vacates a record of conviction under subsection (1) of this section, the person shall be released from all penalties and disabilities resulting from the offense. . . . For all purposes . . . a person whose conviction has been vacated under subsection (1) of this section may state that he or she has never been convicted of that crime.
Perez-Pena argues that because RCW 9.96.060(3) expressly released him from "all penalties and disabilities resulting from the offense" upon the vacation of his conviction and because he obtained a vacation of his judgment and sentence and a dismissal of the original complaint, the hearing officer erred in relying upon his conviction as conclusive evidence of his guilt. Br. in Opp'n at 8-12.
¶ 13 We first discern whether the dismissal of the complaint and vacation of the judgment and sentence constitute a vacation of a person's conviction. RCW 9.96.060(1), to which 9.96.060(3) refers, states that to vacate a misdemeanor criminal conviction, the court must "set[] aside the verdict of guilty; . . . dismiss[] the information, indictment, complaint, or citation against the applicant and vacat[e] the judgment and sentence." (Emphasis added.) Here, the trial judge expressly refused to set aside the guilty verdict  the verdict form is still in the court record, and the docket still reflects the jury's finding of guilt. CP at 30, 49. Therefore, we need not answer the question of whether a vacated conviction may be used as conclusive evidence of guilt in a disciplinary proceeding, for Perez-Pena still has a record of his conviction.
¶ 14 Perez-Pena also argues that the hearing officer improperly allowed the Garcias to testify as to the events surrounding the assault, but prohibited him from doing so. Reply Br. of the Resp't (Reply Br.) at 1. We first note that the hearing officer did allow Perez-Pena to testify as to his version of the events, over the objection of the WSBA. Tr. (Mar. 14, 2006) at 94-95. The hearing officer stated that "the jury's findings make it conclusive that he committed an assault" but that "he's got a right to give his characterization of this and I think to define." Id. at 95. The hearing officer also allowed the Garcias to testify, correctly noting that that part of the purpose of disciplinary hearings is to determine the extent of the injury. Id. at 46. The American Bar Association's (ABA) comments to the Model Rules for Lawyer Disciplinary Enforcement (2007) explain:
The issue to be determined in a disciplinary proceeding predicated upon the finding of guilt of a lawyer for a crime is whether the conduct established by the determination of guilt and subsequent conviction warrants discipline, and if so, the extent of discipline to be imposed. The respondent may offer evidence of mitigating circumstances not inconsistent with the essential elements of the crime whose existence is conclusively established by the finding of guilt.
*414 Rule 19 cmt. Although this comment does not expressly apply to evidence presented by the WSBA association, the logical inference is that, in order for the hearing officer to determine whether the conduct warrants discipline, the WSBA may present evidence consistent with the guilty verdict. The hearing officer allowed both the Garcias and Perez-Pena to testify as to their version of the events so that he could determine the extent of the discipline to be imposed; however, he properly considered the jury's verdict as conclusive evidence that Perez-Pena committed the assault. Tr. (Mar. 14, 2006) at 95. Therefore, we find that the hearing officer did not err in this regard.

Count 2  Failure to Refund Fee
¶ 15 Perez-Pena does not challenge the findings of fact or conclusions of law in regard to count 2. Br. in Opp'n at 1. He does challenge the recommended sanction. Id.

Sanction
¶ 16 The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) (Standards) governs lawyer sanctions in Washington. In re Disciplinary Proceeding Against Egger, 152 Wash.2d 393, 412, 98 P.3d 477 (2004). To arrive at the proper sanction, we first evaluate whether the Board properly determined the presumptive sanction by considering (1) the ethical duties violated, (2) the lawyer's mental state, and (3) the actual or potential injury caused by the lawyer's misconduct. Id. at 412-13, 98 P.3d 477; see also STANDARDS std. 3.0(a)-(c). We then consider the relevant aggravating and mitigating circumstances. STANDARDS std. 3.0(d). Finally, we consider the Board's degree of unanimity and the proportionality of the sanction and whether departure from the recommended sanction is justified. Egger, 152 Wash.2d at 413, 98 P.3d 477. Generally we give greater weight to the Board's recommendation than we do to the hearing officer's, especially where the recommendation is unanimous. Id.; In re Disciplinary Proceeding Against Guarnero, 152 Wash.2d 51, 59, 93 P.3d 166 (2004). Although we are not bound by the Board's recommendation, we generally uphold it unless we "`can articulate a specific reason to reject [it].'" Id. (quoting In re Disciplinary Proceeding Against McLeod, 104 Wash.2d 859, 865, 711 P.2d 310 (1985)).

Presumptive Sanction
¶ 17 Assault: The hearing officer and Board agreed that standard 5.0 pertains to count 1, although they disagreed as to which subsection applies. DP at 6, 21. The Board found that standard 5.12 applies, DP at 21, which states that "[s]uspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11[6] and that seriously adversely reflects on the lawyer's fitness to practice." The hearing officer found that standard 5.14 applies, DP at 6, which states that "[a]dmonition is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law."
¶ 18 We have found that the lawyer's state of mind and the extent of the harm are factual issues, and thus we generally give greater deference to the hearing officer than to the Board on these issues. In re Disciplinary Proceeding Against Longacre, 155 Wash.2d 723, 744, 122 P.3d 710 (2005). Here, however, the Board's reasoning is more persuasive. Although the injury was minor, the Board pointed out that the conduct "seriously" reflected on Perez-Pena's fitness to practice because the assault was on a client and took place during the course of representation. DP at 21. Assaulting one's client during a fee dispute "seriously" adversely reflects on one's fitness to practice. We therefore find that standard 5.12 applies and the presumptive sanction is suspension.
¶ 19 RPC 8.4(i) does not have a counterpart in the model ABA rules, and thus the Standards do not expressly provide for a presumptive sanction. See In re Disciplinary Proceeding Against Curran, 115 Wash.2d 747, 771, 801 P.2d 962 (1990) (explaining that "the ABA Standards do not include a specific Standard aimed at conduct reflecting disregard for the rule of law"). In *415 Curran, this court found that the presumptive sanction for the "reflect[ing a] disregard for the rule of law" phrase in former RLD 1.1(a) (1997) (now RPC 8.4) should be reprimand. Id. at 772, 801 P.2d 962. We did not discuss the "unjustified act of assault" clause.[7] The WSBA argues that the presumptive sanction should be suspension, due to the intentional nature of Perez-Pena's act and the fact that it occurred in the course of representing his clients. Answer Br. of WSBA at 17-18. We agree with the WSBA. In Curran, we noted that the primary purpose of the Rules of Professional Conduct is to "protect[] the public from unworthy practitioners." 115 Wash.2d at 772, 801 P.2d 962. Therefore, because the "disregard for the rule of law" clause of former RLD 1.1(a) was only tangentially related to the practice of law, we found that reprimand was the appropriate presumptive sanction. See 115 Wash.2d at 772, 801 P.2d 962 (finding that "vigilant protection of the public from the dishonest and the incompetent will do more to enhance public confidence in the bar than enforcement of our rules having a more tangential relationship to practice"). Here, however, Perez-Pena's acts were directly related to the practice of law  he assaulted his client during a fee dispute. We therefore find that the presumptive sanction is suspension.
¶ 20 Failure to Refund Unearned Fee: Because the hearing officer found that count 2 was unproved, he did not find a presumptive sanction for this count. The Board found that standard 7.2 applies to Perez-Pena's violation of former RPC 1.15(d) (now RPC 1.16(d)). Standard 7.2 states that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." Perez-Pena actively prevented the return of the unearned fee. Although he argues that he twice tried to return the money, the important fact is that he twice stopped payment on the checks, without any notice to the Garcias. He has still failed to return the money, even after a court ordered him to do so in the civil proceeding brought against him by the Garcias. Such conduct is knowing, and thus we find that suspension is the presumptive sanction for count 2.

III

Aggravating and Mitigating Factors
¶ 21 Assault: For count 1, the hearing officer found the aggravating factors of: (1) refusal to acknowledge wrongful nature of conduct and (2) substantial experience in the practice of law. DP at 8. The Board found only the first factor and did not explain why it did not find the latter. Id. at 21. The hearing officer found the mitigating factors of: (1) absence of a prior disciplinary record, (2) absence of a selfish or dishonest motive, (3) full and free disclosure to the disciplinary board, (4) interim rehabilitation, and (5) imposition of other penalties or sanctions. Id. at 8. The Board found only the mitigating factor of imposition of other penalties or sanctions and did not explain why it failed to find the other factors. Id. at 21. Because we defer to the hearing officer on factual findings, and because the Board failed to explain why it amended the hearing officer's findings regarding aggravating and mitigating factors, we defer to the hearing officer.
¶ 22 We do, however, find that two of the mitigating factors that the hearing officer found are inapplicable as a matter of law. The mitigating factor of interim rehabilitation does not apply. The ABA deleted this as an independent factor in 1992 and instead incorporated it into the "mental disability or chemical dependency" factor. See STANDARDS std. 9.32(i)(3) ("[T]he respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation. . . ."). Thus, this factor is not applicable to the facts of this case.
¶ 23 We also find that Perez-Pena's municipal court punishment does not mitigate his sanction here. In Haley we rejected *416 the proposition that disciplinary proceedings are a punishment scheme, noting that "`our primary concern is with protecting the public and deterring other lawyers from similar misconduct.'" 156 Wash.2d at 338 n. 10, 126 P.3d 1262 (quoting In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 95, 667 P.2d 608 (1983)). The criminal justice system enforces the criminal code and "bar discipline supplements the work of the criminal courts in order to maintain respect for the integrity of legal institutions." Curran, 115 Wash.2d at 771-72, 801 P.2d 962. In Curran, we considered "sanctions already imposed" as a mitigating factor, but we were referring to Curran's 18-month interim suspension, not his prison sentence. Id. at 773, 801 P.2d 962. Therefore, Perez-Pena's municipal court sanctions do not mitigate any sanctions that he receives from this court.
¶ 24 In sum, for count 1 we find two aggravating factors: (1) refusal to acknowledge wrongful nature of conduct, and (2) substantial experience in the practice of law. We find three mitigating factors: (1) absence of prior disciplinary record, (2) absence of a dishonest or selfish motive, and (3) full and free disclosure to the Board or cooperative attitude toward the proceedings.
¶ 25 Failure to Return Unearned Fee: Because the hearing officer found that count 2 should be dismissed, he did not make any findings regarding aggravating or mitigating factors on that count. See DP at 7-9. The Board found the aggravating factors of: (1) dishonest or selfish motive, (2) refusal to acknowledge wrongful nature of misconduct, and (3) indifference to making restitution. Id. at 22. The Board found the mitigating factor of: (1) absence of a prior disciplinary record. Id.
¶ 26 Although generally the act of keeping unearned fees involves dishonesty or selfishness, the record does not provide evidence that Perez-Pena was acting with such motives here. We thus find that this factor does not apply. Nor does the record support finding that Perez-Pena has failed to acknowledge the wrongful nature of the misconduct. He has, however, been indifferent to making restitution. Additionally, we find that the aggravating factor of substantial experience in the practice of law applies here as it did in count 1. Finally, as they did in count 1, the mitigating factors of absence of prior disciplinary record and cooperation with the disciplinary proceedings also apply.
¶ 27 Thus, we find two aggravating factors: (1) indifference to making restitution, and (2) substantial experience in the practice of law. We find three mitigating factors: (1) absence of prior disciplinary record, (2) absence of dishonest or selfish motive, and (3) full and free disclosure to the Board or cooperative attitude toward the proceedings.

Unanimity and Proportionality
¶ 28 Finally, we consider the Board's degree of unanimity, and the proportionality of the recommended sanction. See Egger, 152 Wash.2d at 413, 98 P.3d 477. Here the Board's decision was unanimous, which generally lends a great deal of weight to its ultimate conclusion. See Haley, 156 Wash.2d at 339, 126 P.3d 1262 (inferring that we will generally adopt the Board's recommended sanction if the decision is unanimous). However, the Board reached its conclusion upon finding more aggravating factors and fewer mitigating factors than we have found, and thus we do not defer so readily to their ultimate recommendation. Perez-Pena has not cited any cases to challenge the Board's recommended sanction, and thus we presume that it is proportional to sanctions imposed in analogous cases. However, because our weighing of aggravating and mitigating factors differs from that of the Board, we impose a 60-day suspension on count 1, to run concurrently with a 60-day suspension on count 2. We also condition Perez-Pena's reinstatement upon his fulfilling the civil judgment against him.

IV

Conclusion
¶ 29 We find that Perez-Pena violated RPC 8.4(b), RPC 8.4(i), and former RPC 1.15(d) (now RPC 1.16(d)). It was not error for the hearing officer to rely on Perez-Pena's assault conviction as conclusive proof of his guilt of the crime, as Perez-Pena had not vacated the conviction in the manner *417 prescribed by RCW 9.96.060(1). Additionally, the hearing officer did not err in allowing the Garcias to testify as to their version of events, as he also allowed Perez-Pena to present his characterization of the assault. Although we find that the hearing officer's recommended sanction was too lenient, we also find that the Board's recommendation was too harsh. Therefore, we impose a 60-day suspension and condition reinstatement upon satisfaction of the civil judgment.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, and RICHARD B. SANDERS, JJ.
MADSEN, J. (concurring).
¶ 30 I agree with the majority's conclusion that the appropriate sanction in this case is a 60-day suspension, with reinstatement conditioned on satisfaction of the civil judgment. However, I also agree with Justice Fairhurst that the record relating to count 2 demonstrates that Fernando Perez-Pena's actions stemmed, at least in part, from a selfish motive. Perez-Pena wanted the signed release forms and kept an unearned fee as leverage to obtain them. Thus, absence of selfish or dishonest motive is not a mitigating factor in this case.
FAIRHURST, J. (dissenting).
¶ 31 I agree with the majority that Fernando Perez-Pena's conviction constitutes evidence of his guilt, that the hearing officer did not err in allowing Cecelia and Arturo Garcia to testify, and that the mitigating factors of interim rehabilitation and imposition of other penalties and sanctions are inapplicable in this case. However, I disagree with the majority regarding the imposed sanction. The majority reduces the sanction recommended by the Washington State Bar Association's (WSBA) Disciplinary Board (Board) based on its mistaken alteration of the Board's findings regarding aggravating and mitigating factors. I am especially reluctant to reduce the imposed sanction where the Board was unanimous in its recommendation and where Perez-Pena has not shown the sanction is disproportionate. Therefore, I would affirm the sanction recommended by the Board.
¶ 32 This court has previously stated that "[w]e will adopt the Board's recommended sanction unless we are clearly persuaded that the sanction was inappropriate." In re Disciplinary Proceeding Against Miller, 149 Wash.2d 262, 277, 66 P.3d 1069 (2003). A sanction that receives unanimous recommendation by the Board, as was the case here, is given a high degree of deference, and a "sanction supported by unanimous recommendation will not be rejected in the absence of clear reasons." Id. at 277-78, 66 P.3d 1069. The only reasons articulated by the majority for altering the Board's recommended six month suspension for count 2 are alleged errors in the Board's determinations of mitigating and aggravating factors. I focus my analysis on the majority's errors regarding the mitigating and aggravating factors pertaining to count 2 because count 2 bears the higher sanction, and reduction of the sanction for count 1 would have had little impact on the length of Perez-Pena's suspension if the majority had properly imposed a six month suspension for count 2.
¶ 33 The majority erroneously concludes that "the record does not provide evidence that Perez-Pena was acting with" dishonest or selfish motive. Majority at 416. The record provides clear evidence of a selfish motive, if not a dishonest one. The majority admits that Perez-Pena stopped payment on the first check "[b]ased on the threats and what he perceived as a lack of appreciation for his agreement to refund the money." Majority at 411. This supports the conclusion that Perez-Pena retained the money, which was clearly not his, out of retaliation for the Garcias' threats and perceived lack of gratitude. Retaliation is by nature selfish. Moreover, the majority acknowledges that the second check bounced because Perez-Pena reported the check stolen. Majority at 412. In fact, the check was not stolen, Perez-Pena was simply upset that his release forms, which were invalid anyway under RPC 1.8(h)(1), were torn. Id. Keeping money that is not yours is dishonest. Claiming that a check was stolen when it arguably was not is dishonest.
*418 ¶ 34 Even if there were insufficient evidence to support the conclusion that Perez-Pena had a selfish or dishonest motive, the majority errs in applying the mitigating factor of absence of selfish or dishonest motive. Majority at 416. If there were no evidence of selfish or dishonest motive in the record, the correct conclusion would be that neither the aggravating nor the mitigating factor applies. The majority essentially holds that insufficient evidence to support the aggravating factor automatically results in the conclusion that the mitigating factor applies. This result is not only illogical, it may also suggest that the hearing officer and Board are required to find either the aggravating factor or the mitigating factor when, in many cases, the record may be insufficient to determine the motive of the attorney facing discipline. In such cases, the court should apply neither the aggravating nor the mitigating factor.
¶ 35 The majority also erroneously applies to count 2 the mitigating factor that relates to full and free disclosure to the Board or a cooperative attitude toward the proceedings. Majority at 416. The hearing officer found this mitigating factor applied to count 1, but the Board did not apply this factor to either count and was silent as to its reasons for differing from the hearing officer.
¶ 36 It is important to note that the mitigating factor of full and free disclosure does not mean merely showing up and answering questions truthfully because "[a]n attorney is expected to cooperate fully with the discipline process." In re Disciplinary Proceeding Against Whitt, 149 Wash.2d 707, 721, 72 P.3d 173 (2003). Full and free disclosure should be a mitigating factor only where there is at least evidence that the attorney cooperated beyond the bare minimum required to avoid perjury. Such evidence might include self-reporting to the WSBA or offering details or evidence not in the attorney's favor that might not otherwise come to light in the disciplinary proceeding.
¶ 37 The record does not support the finding that Perez-Pena offered full and free disclosure and cooperation throughout the disciplinary proceeding. The absence of evidence of full and free disclosure in the record would be less important if the hearing officer and the Board were unanimous. This court has been willing to overlook the absence of such evidence where the hearing officer and the Board were unanimous in applying this mitigating factor and the WSBA failed to contest the factor. In re Disciplinary Proceeding Against Dornay, 160 Wash.2d 671, 686-87, ¶¶ 41-43, 161 P.3d 333 (2007). However, where there is clear disagreement between the hearing officer and the Board and nothing in the record suggests full and free disclosure or a cooperative attitude, it is inappropriate to conclude that there was full and free disclosure based purely on conjecture.
¶ 38 The majority justifies its reliance on the hearing officer's finding of full and free disclosure by stating that "we defer to the hearing officer on factual findings." Majority at 415. Even if there were sufficient evidence in the record to support the application of this mitigating factor, I am troubled by the majority's holding that whether given conduct constitutes full and fair disclosure or cooperation is a finding of fact. It may instead be a mixed finding of law and fact. Mixed findings of law and fact involve "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." Pullman-Standard, a Div. of Pullman, Inc. v. Swint, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). The question of whether Perez-Pena's conduct in the proceedings met the standard of full and free disclosure or demonstrated a sufficiently cooperative attitude is likely to be a mixed question of law and fact because the issue is whether Perez-Pena's conduct in the proceedings satisfies the standard required for the mitigating factor to apply. As a result, there may be reason to defer to the Board rather than to the hearing officer, especially because as "`the only body to hear the full range of disciplinary matters, the [Disciplinary] Board has the opportunity to develop unique experience and perspective in the administration of sanctions.'" In re Disciplinary Proceeding Against Boelter, 139 Wash.2d 81, 98, 985 P.2d 328 (1999) (alteration in original) (quoting *419 In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 94, 667 P.2d 608 (1983)).
¶ 39 This mitigating factor also pertains to disclosure and attitude throughout the entire proceedings, not merely before the hearing officer. It seems imprudent to give the hearing officer the final say on a mitigating factor that cannot be decided before the proceeding has run its course. Establishing a general rule that defers to the hearing officer on this factor also reduces the incentive for the attorneys facing discipline to full disclosure and cooperation throughout the entire proceeding rather than through only the hearing officer's portion.
¶ 40 The appropriateness of the sanction is generally determined based on the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) (ABA Standards). In re Disciplinary Proceeding Against Haley, 156 Wash.2d 324, 339, ¶ 24, 126 P.3d 1262 (2006). Properly applied to this case, the ABA Standards support the mitigating factor of absence of prior disciplinary record and the aggravating factors of (1) dishonest or selfish motive, (2) indifference to making restitution, and (3) substantial experience in the practice of the law. In light of these aggravating and mitigating factors, and the fact that retaining unearned legal fees is a serious offense, Perez-Pena's actions merit at least the six month suspension recommended by the Board.
¶ 41 In addition to considering the ABA Standards, this court evaluates the appropriateness of a sanction based on the proportionality of the sanction and unanimity of the Board's decision. Id. "We review the proportionality of sanctions only if the issue is raised by the attorney who is being disciplined." In re Disciplinary Proceeding Against Whitney, 155 Wash.2d 451, 469, ¶ 42, 120 P.3d 550 (2005). "[T]he attorney facing discipline bears the burden of bringing cases to the court's attention that demonstrate the disproportionality of the sanction imposed." In re Disciplinary Proceeding Against Cohen, 150 Wash.2d 744, 763, 82 P.3d 224 (2004); see also In re Disciplinary Proceeding Against Kagele, 149 Wash.2d 793, 821, 72 P.3d 1067 (2003). The Board was unanimous and Perez-Pena has not cited any case to challenge the Board's sanction; therefore, the Board's sanction should stand.
¶ 42 The sanction adopted by the majority is also inconsistent with the general rule that suspensions should be imposed for a minimum of six months. See In re Disciplinary Proceeding Against Egger, 152 Wash.2d 393, 419, 98 P.3d 477 (2004); see also ABA STANDARDS std. 2.3. In the past, this court has adopted a suspension below the customary six month minimum only where the Board unanimously recommended a lesser suspension, see In re Disciplinary Proceeding Against Carpenter, 160 Wash.2d 16, 32, ¶ 33, 155 P.3d 937 (2007), or where the Board was not unanimous in its recommendation. See, e.g., In re Disciplinary Proceedings Against Johnson, 118 Wash.2d 693, 705, 826 P.2d 186, 192 (1992) (declining to impose the recommended six month suspension because it would have "drastic effect" upon attorney's ability to continue repaying his clients).
¶ 43 The majority errs in its analysis of mitigating and aggravating factors and is too quick to abandon the Board's recommendation. I would impose the sanction of a six month suspension as recommended by the Board; therefore, I respectfully dissent.
I CONCUR: Justice JAMES M. JOHNSON.
NOTES
[1] Because Perez-Pena does not specifically challenge the findings of fact in appealing the Board's recommended sanction, we refer to the Board's findings.
[2] This arrangement potentially violates RPC 1.8(h)(1), which prohibits a lawyer from "prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement." However, the WSBA did not include this allegation in its formal complaint, and thus we do not consider it here.
[3] "It is professional misconduct for a lawyer to: . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. . . ." RPC 8.4(b).
[4] "It is professional misconduct for a lawyer to: . . . commit . . . any unjustified act of assault. . . ." RPC 8.4(i).
[5] Former RPC 1.15(d) is now RPC 1.16(d), which states that "[u]pon termination of representation[,] a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payment of fee or expense that has not been earned or incurred."
[6] Standard 5.11 discusses serious criminal conduct and crimes of dishonesty.
[7] "It is professional misconduct for a lawyer to: . . . commit any act involving moral turpitude, or corruption, or any unjustified act of assault or other act which reflects disregard for the rule of law. . . ." RPC 8.4(i).