[No. 200,606-0.   En Banc.]
Argued June 9, 2009.     Decided August 27, 2009.

*In the Matter of the Disciplinary Proceeding Against* S. RICHARD HICKS, *an Attorney at Law.*

*Scott G. Busby*, for the bar association.

¶1 ALEXANDER, C.J. — Attorney S. Richard Hicks appeals the recommendation of the Washington State Bar Association (WSBA) Disciplinary Board (Board) that he be suspended from the practice of law for a period of 24 months. The WSBA asks us to reject the Board's recommended sanction and disbar Hicks. We adopt the Board's recommendation and order Hicks suspended for 24 months.

I

¶2 Hicks was admitted to the practice of law in Washington in 1976. In January 2005, the WSBA opened a grievance against Hicks as a result of an overdraft of his trust account. The overdraft occurred when Hicks wrote a check to a client. As part of its investigation, the WSBA requested that Hicks provide an explanation of the overdraft.

¶3 In response to the WSBA, Hicks provided a letter dated January 28, 2005. In it, he stated the overdraft occurred

> "as a result of an oversight, in failing to record into the computer, a check drawn against the account and thereafter making a separate check payment to a client . . . . At the time of the overdraft, the only funds in the account belonged to one client and all payments were to or for the benefit of that client."

Clerk's Papers (CP) at 209. Based on the explanation that Hicks set forth in his letter, the WSBA dismissed the pending grievance.

¶4 A subsequent WSBA audit of Hicks' trust account was triggered by a series of overdrafts on Hicks' trust account between May and June 2005. The audit, which reviewed the time period of June 2004 through June 2006, revealed in part that:

5. Between January 2005 and July 2005, [Hicks] did not always maintain a check register during the audit period.

6. When [Hicks] did maintain check registers, they did not always identify transactions by client, did not always have a running balance, did not always contain entries for all transactions, and [Hicks] did not reconcile his check registers to the bank statements.

. . . .

12. From January 2005 through July 2005, [Hicks] did not always maintain client ledgers.

13. Prior to August 2005 of the audit period, [Hicks] did not always reconcile his client ledgers to other records.

. . . .

15. From May 2004 through July 2005, [Hicks] used his trust account for his personal and business expenses as well as for transactions involving client funds.

16. From June 2004 through July 2005, [Hicks] paid at least $38,000 of his personal expenses from funds in the trust account.

17. From June 2004 through July 2005, [Hicks] deposited at least $45,000 of personal funds into the trust account.

. . . .

20. On one occasion [Hicks] did not maintain client funds in the trust account.

*Id.* at 204-05; *see* Ex. 7.

¶5 In April 2007, the WSBA filed a formal complaint against Hicks. It alleged that Hicks committed six acts of professional misconduct, as follows:

¶6 Count 1: "By failing to maintain adequate records regarding client funds in his possession, Respondent violated former RPC 1.14(b)(3) [(2002)]." CP at 54.

¶7 Count 2: "By failing to deposit and/or maintain all client funds in trust (by failing to deposit advance fee or cost deposits, and/or by having a shortage in the account), Respondent violated former RPC 1.14(a)." *Id.* at 55.

¶8 Count 3: "By depositing lawyer funds into his pooled IOLTA [(interest on lawyers trust account)] trust account, Respondent violated former RPC 1.14(a)." *Id.*

¶9 Count 4: "By telling client SE that normally a lawyer deducts the lawyer's whole fee at the beginning of a series of payments, when such practice is prohibited by the RPC, Respondent violated [former] RPC 8.4(c) [(2002)]." *Id.* at 55-56.

¶10 Count 5: "By taking more fees than he was entitled to, Respondent violated [former] RPC 1.5 [(1990)]." *Id.* at 56.

¶11 Count 6: "By making a false statement to the Association in the January 28, 2005 letter, Respondent violated [former] RPC 8.4(c) and/or ELC 5.3(e)(1)." *Id.* at 57.

¶12 At the outset of a disciplinary hearing on the complaint, Hicks and the WSBA stipulated that Hicks violated the Rules of Professional Conduct as set forth in count 3. They also stipulated to certain facts, including that Hicks previously testified that he " 'fudged things' " in his January 2005 letter responding to the WSBA and that the absence of a prior disciplinary record was a mitigating factor. Ex. 18, at 3. Following the hearing, the hearing officer entered findings of fact, four of which provided as follows:

> 57. At a deposition taken by Disciplinary Counsel on December 18, 2006 in connection with this grievance, Respondent testified that he "fudged things" when he responded to the Association's inquiry in January 2005.

> 58. By "fudg[ing] things," [in his January 2005 letter,] Respondent meant that the information was inaccurate and that "the reading of [the letter is] different than, you know, the facts."

> 59. At hearing, Respondent acknowledged that he "wasn't being fully cooperative" when he wrote the letter.

> . . . .

> 63. Respondent submitted the inaccurate and incomplete information in the letter to avoid detection of his trust account violations.

CP at 210.

¶13 The hearing officer concluded that the WSBA had proved by a clear preponderance of the evidence the viola-

tions charged in counts 1-4 and 6 but did not prove the allegation set forth in count 5. The hearing officer concluded additionally that the following aggravating factors were present: (1) "dishonest or selfish motive," (2) "a pattern of misconduct with regard to the trust account record keeping and commingling of funds," (3) "multiple offenses," and (4) "substantial experience in the practice of law." *Id.* at 215. Five mitigating factors, according to the hearing officer, were present: (1) "absence of a prior disciplinary record," (2) "personal or emotional problems," (3) "timely good faith effort to make restitution or rectify consequences of misconduct," (4) "character or reputation," and (5) "imposition of other penalties or sanctions." *Id.* Finally, the hearing officer recommended that Hicks should be suspended from the practice of law for a period of 24 months.

¶14  By a unanimous vote, the Board adopted the hearing officer's findings, conclusions, and recommendation. Hicks then appealed the Board's recommendation to this court.

## II

¶15  "This court is ultimately responsible for lawyer discipline in the state of Washington and holds plenary authority in that regard." *In re Disciplinary Proceeding Against Perez-Pena*, 161 Wn.2d 820, 829, 168 P.3d 408 (2007) (citing *In re Disciplinary Proceeding Against Whitney*, 155 Wn.2d 451, 461, 120 P.3d 550 (2005)). "Unchallenged findings of fact made by the hearing officer and unchanged by the Board are viewed as verities on appeal." *Id.* "Conclusions of law are reviewed de novo and will not be disturbed if they are supported by the hearing officer's findings of fact." *In re Disciplinary Proceeding Against Cramer*, 165 Wn.2d 323, 331, 198 P.3d 485 (2008) (citing *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 330, 157 P.3d 859 (2007)).

## III

¶16  Because Hicks does not challenge any of the hearing officer's findings of fact, we accept them as verities. Hicks

also does not challenge the hearing officer's conclusions of law with regard to counts 1-5. Our review, therefore, is limited to determining (1) whether the hearing officer correctly concluded that the WSBA proved count 6 by a clear preponderance of the evidence and (2) whether the sanction recommended by the hearing officer and Board should be upheld.

## CHALLENGED CONCLUSION

¶17 The hearing officer and a unanimous Board concluded that Hicks violated ELC 5.3(e)(1) and former RPC 8.4(c), as alleged in count 6, "[b]y making a statement to the Association in the January 28, 2005 letter, which was not a 'complete and accurate' statement." CP at 213. Hicks challenges these conclusions. For reasons set forth below, we hold that the unchallenged findings of fact support the conclusions of the hearing officer and the Board that Hicks violated ELC 5.3(e)(1) and former RPC 8.4(c).

### *ELC 5.3(e)(1)*

¶18 ELC 5.3(e) provides that "[a]ny lawyer must promptly respond to any inquiry or request made under these rules for information relevant to grievances or matters under investigation. Upon inquiry or request, any lawyer must: (1) furnish in writing, or orally if requested, a *full and complete response* to inquiries and questions." (Emphasis added.)

¶19 Hicks does not dispute that he "acted dishonestly" and "submitted . . . inaccurate and incomplete information" in his January 2005 letter to the WSBA. CP at 210. Nor does he argue that the letter was not "an [in]accurate and [in]complete response." *Id.* By Hicks' own admission, his letter " 'fudged things' " and provided information that was " 'different than, you know, the facts,' " and he " 'wasn't being fully cooperative.' " *Id.* In light of the hearing officer's unchallenged findings in this regard, it is clear that Hicks

did not make a "full and complete response" to the WSBA's inquiry. We hold, therefore, that he violated ELC 5.3(e)(1).

*Former RPC 8.4(c)*

¶20 Former RPC 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." We have indicated that in determining whether or not an attorney violated former RPC 8.4(c), "we are tasked with determining simply 'whether the attorney lied.' " *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d 196, 213, 125 P.3d 954 (2006) (quoting *In re Disciplinary Proceeding Against Dann*, 136 Wn.2d 67, 77, 960 P.2d 416 (1998)).

¶21 Hicks' letter of January 2005 contained at least two falsehoods. First, he was not truthful when he asserted in his letter that at the time of the January 14, 2005, overdraft, " 'the only funds in the account belonged to one client.' " CP at 209. This statement ran directly counter to the hearing officer's finding of fact that at the time of the overdraft "there were no client funds in [Hicks'] trust account," and that "[t]he funds in the trust account were [Hicks'] own funds." *Id.* Hicks also lied when he stated that at the time of the overdraft " 'all payments were to or for the benefit of that client.' " *Id.* This statement was contrary to another of the hearing officer's findings that during some of the audit period, which included the time of the overdraft, Hicks used his trust account for his personal expenses and "paid at least $38,000 of his personal expenses from funds in the trust account." *Id.* at 205. Moreover, Hicks' violation of former RPC 8.4(c) is made clear by his aforementioned testimony that the letter " 'fudged things' " and that "the reading of [the letter is] different than, you know, the facts." *Id.* at 210. Given the foregoing, we hold that both of the above-quoted statements in the letter constituted a violation of former RPC 8.4(c).

SANCTION

¶22 While the Board's recommended sanctions should be accorded great deference by this court, we " 're-tain[ ] ultimate authority for determining the appropriate sanction for an attorney's misconduct.' " *In re Disciplinary Proceeding Against Schwimmer*, 153 Wn.2d 752, 757, 108 P.3d 761 (2005) (quoting *In re Disciplinary Proceeding Against Kagele*, 149 Wn.2d 793, 816, 72 P.3d 1067 (2003) (citing *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 317, 962 P.2d 813 (1998))). Consequently, "an appeal of the Disciplinary Board's decision carries with it the chance that we might increase the recommended sanction instead of simply adopting or decreasing it." *Dann*, 136 Wn.2d at 84-85 (citing *In re Disciplinary Proceeding Against Lynch*, 114 Wn.2d 598, 789 P.2d 752 (1990); *In re Disciplinary Proceeding Against Selden*, 107 Wn.2d 246, 728 P.2d 1036 (1986)). Generally, we affirm the Board's recommended sanction unless we can " ' " 'articulate a specific reason to reject [it].' " ' " *Marshall*, 160 Wn.2d at 343 (alteration in original) (quoting *Poole*, 156 Wn.2d at 209-10 (quoting *In re Disciplinary Proceeding Against Guarnero*, 152 Wn.2d 51, 59, 93 P.3d 166 (2004) (quoting *In re Disciplinary Proceeding Against McLeod*, 104 Wn.2d 859, 865, 711 P.2d 310 (1985)))). Where a sanction is recommended by a unanimous Board, this court will uphold it " 'in the absence of a clear reason for departure.' " *In re Disciplinary Proceeding Against Behrman*, 165 Wn.2d 414, 422, 197 P.3d 1177 (2008) (quoting *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 717, 72 P.3d 173 (2003)).

¶23 To determine the appropriate disciplinary sanction, we employ the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (ABA *Standards*) "as a basic, but not conclusive, guide." *In re Disciplinary Proceeding Against Eugster*, 166 Wn.2d 293, 314, 209 P.3d 435 (2009) (citing *In re Disciplinary Proceed-*

*ing Against Burtch*, 162 Wn.2d 873, 896, 175 P.3d 1070 (2008)). We engage "in a two-step process utilizing the ABA *Standards.*" *Id.* at 316 (citing *In re Disciplinary Proceeding Against Kronenberg*, 155 Wn.2d 184, 195, 117 P.3d 1134 (2005)). First, we determine the presumptive sanction by considering the ethical duty that the attorney violated, the attorney's state of mind, and the harm to the victim caused by the attorney's misconduct. Next, we consider whether any mitigating or aggravating factors apply to determine if the presumptive sanction should be modified. No one factor is determinative. In addition, if raised by the attorney who is being disciplined, we must consider two *Noble*[1] factors. *Id.* (citing *Schwimmer*, 153 Wn.2d at 764 (citing *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 66 P.3d 1057 (2003))). "Those two factors are '(1) proportionality of the sanction to the misconduct and (2) the extent of the agreement among the members of the [d]isciplinary [b]oard.' " *Id.* (alterations in original) (quoting *Schwimmer*, 153 Wn.2d at 764).[2]

*Presumptive Sanction*

¶24 The hearing officer concluded that pursuant to ABA *Standard* stds. 4.13 and 5.13, a reprimand was the presumptive sanction for counts 1-3 and the violation of former RPC 8.4(c) as charged in count 6. The hearing officer also concluded that suspension was the presumptive sanction for violation of ELC 5.3(e)(1) as charged in count 6, pursuant to ABA *Standards* std. 7.2. The Board unanimously adopted these conclusions.

¶25 Hicks does not dispute that suspension is the presumptive sanction for a violation of ELC 5.3(e)(1), but

---

[1] *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 667 P.2d 608 (1983).

[2] Hicks argues that this court must also consider the *Noble* factor that takes into account the effect of the sanction on the attorney. Appellant's Opening Br. at 16-17. However, we no longer consider that factor in determining whether a sanction is appropriate. *Kuvara*, 149 Wn.2d at 258.

rather cites *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 67 P.3d 1086 (2003) and *In re Disciplinary Proceeding Against DeRuiz*, 152 Wn.2d 558, 99 P.3d 881 (2004) for the proposition that the presumptive term of suspension is six months. Appellant's Opening Br. at 10-11. A reading of *Cohen* and *DeRuiz* shows, however, that the cases do not support this proposition. In *Cohen*, we held, "A period of six months is generally the accepted minimum term of suspension. The minimum suspension is appropriate in cases where there are both no aggravating factors and at least some mitigating factors, or when the mitigating factors clearly outweigh the aggravating factors." *Cohen*, 149 Wn.2d at 339 (citation omitted); *DeRuiz*, 152 Wn.2d at 582 (quoting *Cohen*, 149 Wn.2d at 339). Here, the minimum term of suspension is not the appropriate presumptive sanction because there are several aggravating factors which outweigh the mitigating factors. *See infra* pp. 786-88.

¶26 As noted above, the WSBA has assigned error to the conclusion of the hearing officer and the Board that suspension under ABA *Standards* std. 7.2 is the presumptive sanction for Hicks' violation of ELC 5.3(e)(1). Answering Br. of the WSBA at 20-22. It asserts, relying on our decision in *Whitt*, 149 Wn.2d at 719, that "[t]he presumptive sanction is disbarment" under ABA *Standards* std. 7.1. Answering Br. of the WSBA at 20-21.

¶27 ABA *Standards* std. 7.2 provides, "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system."

¶28 ABA *Standards* std. 7.1 provides:

Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional *with the intent to obtain a benefit for the lawyer or another*, and *causes serious or potentially serious injury* to a client, the public, or the legal system.

(Emphasis added.)

¶29 Contrary to the WSBA's argument, ABA *Standards* std. 7.1 does not apply to Hicks' violation of ELC 5.3(e)(1). In *Whitt*, a lawyer fabricated multiple documents and made false representations to the WSBA during a disciplinary investigation. We held that ABA *Standard* std. 7.1 applied because (1) the lawyer acted with "intent to obtain a benefit for the lawyer or another" based on her "inten[t] to deceive the disciplinary process in order to avoid disciplinary action" and (2) "her actions caused serious or potentially serious injury to her client, the public and the legal system." *Whitt*, 149 Wn.2d at 719.

¶30 Here, Hicks violated ELC 5.3(e)(1) with the "intent to obtain a benefit for the lawyer" based on the hearing officer's finding that Hicks "submitted the inaccurate and incomplete information in the letter to avoid detection of his trust account violations." CP at 210. The hearing officer also found that Hicks' conduct "causes injury or potential injury to a client, the public, or the legal system." *Id.* She did not, however, find that the injury was "serious or potentially serious." *Id.* Nor did the Board see fit to find Hicks' actions caused serious or potentially serious injury. Consequently, by the unchallenged findings of the hearing officer and the unanimous Board, ABA *Standards* std. 7.1 does not apply.

¶31 Given the aforementioned deference that we generally afford the Board with regard to sanctions, we defer here and hold that ABA *Standards* std. 7.2 applies to Hicks' violation of ELC 5.3(e)(1). Suspension, therefore, is the presumptive sanction.

### *Aggravating and Mitigating Factors*

¶32 As noted above, the hearing officer determined that the following aggravating factors are applicable in this case: (1) "dishonest or selfish motive," (2) "a pattern of misconduct with regard to the trust account record keeping and commingling of funds," (3) "multiple offenses," and (4) "substantial experience in the practice of law." CP at 215. The hearing officer also found the presence of five mitigat-

ing factors: (1) "absence of a prior disciplinary record," (2) "personal or emotional problems," (3) "timely good faith effort to make restitution or rectify consequences of misconduct," (4) "character or reputation," and (5) "imposition of other penalties or sanctions." *Id.* The Board unanimously affirmed these determinations.

¶33 Both parties challenge these findings in part. The WSBA asserts that two of the mitigating factors counted by the hearing officer—personal or emotional problems, under ABA *Standards* std. 9.32(c), and imposition of other penalties or sanctions, under ABA *Standards* std. 9.32(k)—are unsupported by the law and the evidence. Answering Br. of WSBA at 22-24. Hicks claims that the mitigating factor of " 'personal or emotional problems' figures quite prominently" in this matter.[3] Appellant's Opening Br. at 16.

¶34 We first address the personal or emotional problems mitigator. This court " require[s] a connection between the asserted problem and the misconduct." *In re Disciplinary Proceeding Against Holcomb*, 162 Wn.2d 563, 591, 173 P.3d 898 (2007) (citing *In re Disciplinary Proceeding Against Christopher*, 153 Wn.2d 669, 684, 105 P.3d 976 (2005); *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 774, 801 P.2d 962 (1990) (citing *In re Disciplinary Proceeding Against Johnson*, 114 Wn.2d 737, 748, 790 P.2d 1227 (1990))). We will decline to adopt the Board's conclusion that this mitigator applies if "[t]here is no demonstrated connection between [the lawyer's] problems and the [misconduct]." *Christopher*, 153 Wn.2d at 684.

---

[3] In support of this claim, Hicks asserts that his misconduct occurred in part because he was "without resources." Appellant's Opening Br. at 16. This argument is perhaps supported by the hearing officer's finding that the deterioration of Hicks' financial situation resulted in his "personal bank accounts being closed." CP at 211. However, "personal financial problems are generally not considered mitigators," *In re Disciplinary Proceeding Against Holcomb*, 162 Wn.2d 563, 591, 173 P.3d 898 (2007) (citing *In re Disciplinary Proceeding Against Christopher*, 153 Wn.2d 669, 684, 105 P.3d 976 (2005); *In re Disciplinary Proceeding Against Curran*, 115 Wn.2d 747, 774, 801 P.2d 962 (1990) (citing *In re Disciplinary Proceeding Against Johnson*, 114 Wn.2d 737, 748, 790 P.2d 1227 (1990))), and therefore we do not consider Hicks' financial situation as a mitigating factor in this case.

¶35 The hearing officer did not expressly find a connection between Hicks' personal problems and any of his misconduct. Rather, she found that Hicks had a major illness and surgery in 2003, that subsequent to the surgery Hicks' mental and physical condition and financial situation deteriorated, and that the deterioration of Hicks' financial situation resulted in his personal bank accounts being closed. These findings arguably demonstrate a connection between Hicks' personal problems and his violation of former RPC 1.14(a), as charged in count 3, by depositing lawyer funds into his pooled IOLTA trust account. The hearing officer's findings do not, however, demonstrate a connection between Hicks' problems and any of the other misconduct charged, including his violation of ELC 5.3(e)(1) and former RPC 8.4(c), as charged in count 6. Thus, although the personal or emotional problems mitigator was properly found, its effect, if any, was inconsequential in light of the unchallenged aggravating factors.

¶36 With regard to the imposition of other penalties mitigator, the WSBA correctly notes that nothing in the hearing officer's decision supports her conclusion that additional penalties or sanctions were imposed on Hicks for his misconduct. Consequently, we hold that this mitigator is inapplicable here.

### Noble *Factors*

¶37 Finally, as discussed above, we must consider the *Noble* factors of proportionality of sanctions and unanimity of the Board only if those issues are raised by the attorney who is being disciplined. *Eugster*, 166 Wn.2d at 315 (citing *Schwimmer*, 153 Wn.2d at 764 (citing *Kuvara*, 149 Wn.2d 237)). Because Hicks has raised the issue of proportionality, it is properly before us. We need not analyze the unanimity of the Board's decision as it is unchallenged, but the Board's recommendation is nonetheless entitled to great deference because it was unanimous. *In re Disciplinary Proceeding Against Day*, 162 Wn.2d 527, 538-

39, 173 P.3d 915 (2007) (quoting *Whitney*, 155 Wn.2d at 469; *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 98, 667 P.2d 608 (1983))).

¶38 With respect to proportionality of sanctions, we "generally adopt the Board's recommended sanction unless the sanction *departs significantly* from sanctions imposed in other cases." *In re Disciplinary Proceeding Against Haley*, 156 Wn.2d 324, 339, 126 P.3d 1262 (2006) (emphasis added) (citing *Kuvara*, 149 Wn.2d at 259). "The disciplined attorney has the burden to bring forward cases to persuade the court that the recommended sanction is disproportionate." *Kagele*, 149 Wn.2d at 821. "Proportionate sanctions are those which are ' "roughly proportionate to sanctions imposed in similar situations or for analogous levels of culpability." ' " *In re Disciplinary Proceeding Against Dynan*, 152 Wn.2d 601, 623, 98 P.3d 444 (2004) (quoting *In re Disciplinary Proceeding Against Anschell*, 141 Wn.2d 593, 615, 9 P.3d 193 (2000) (quoting *In re Disciplinary Proceeding Against Gillingham*, 126 Wn.2d 454, 469, 896 P.2d 656 (1995))).

¶39 For differing reasons, Hicks and the WSBA argue that the 24-month suspension recommended by the hearing officer and the Board is disproportionate. Hicks contends that the sanction is disproportionate to (1) "ELC 5.3 cases imposing a lesser sanction" and (2) "cases of similar seriousness in which lesser sanctions have been imposed." Appellant's Opening Br. at 18, 19. He also claims that the sanction is disproportionate because in "[m]ost cases" in which this court imposed a two-year suspension, it was a reduction from the presumptive sanction of disbarment. *Id.* at 22. The WSBA argues that disbarment is the appropriate sanction under proportionality review. Answering Br. of WSBA at 26-28. For the reasons explained below, both Hicks and the WSBA fail to persuade us that the recommended sanction is disproportionate.

¶40 This case is readily distinguishable from the cases cited by Hicks in his brief and at oral argument. First, the cases characterized by Hicks as "ELC 5.3 cases imposing a

lesser sanction," Appellant's Opening Br. at 18-19, are distinguishable because they involved lawyers who failed to respond to a request for information. *See DeRuiz*, 152 Wn.2d at 566-67, 578 (lawyer failed to file a notice of intent to appear for the show cause hearing and failed to respond to the WSBA's petition); *In re Disciplinary Proceeding Against Burtch*, 112 Wn.2d 19, 25, 770 P.2d 174 (1989) (despite making assurances to the WSBA that he would respond to two complaints filed against him, lawyer failed to do so; lawyer also failed to respond to a third complaint); *In re Disciplinary Proceeding Against Clark*, 99 Wn.2d 702, 704-05, 663 P.2d 1339 (1983) (lawyer agreed to send additional information to the WSBA concerning a complaint filed against him, but never provided that information; lawyer did not respond to subsequent letter from the WSBA requesting the material he previously agreed to send). Unlike the lawyers in *DeRuiz*, *Burtch*, and *Clark*, Hicks affirmatively responded to the WSBA's request for information and, as discussed above, his response contained inaccurate and false statements.

¶41 Second, this case is distinct from most of the cases that Hicks describes as "cases of similar seriousness in which lesser sanctions have been imposed," Appellant's Opening Br. at 19, because the lawyers in those cases did not act with intent to benefit from their misconduct. *See Dynan*, 152 Wn.2d at 621 (concluding lawyer did not intend to deceive the court, did not intend to benefit, and did not benefit, from misconduct); *In re Disciplinary Proceeding Against Carmick*, 146 Wn.2d 582, 605, 48 P.3d 311 (2002) (rejecting Board's conclusion that lawyer had dishonest motive in case "that would not profit him personally"); *In re Disciplinary Proceeding Against Malone*, 107 Wn.2d 263, 270, 728 P.2d 1029 (1986) (concluding lawyer did not intend to violate rule of professional conduct). Furthermore, *Dann* is not directly on point for while it did involve dishonesty, the Board in that case did not adopt the hearing officer's recommended term of suspension of two years. *Dann*, 136 Wn.2d at 76 (unanimous Board adopted hearing officer's

findings of fact, conclusions of law, and recommended reprimand, but also, without comment as to its reasons, reduced the term of suspension to one year). Dissimilar to the lawyers in *Dynan, Carmick*, and *Malone*, Hicks acted with intent to benefit from his misconduct because, as discussed above, he submitted inaccurate and incomplete information in his January 2005 letter "to avoid detection of his trust account violations." CP at 210. Unlike in *Dann*, the Board here unanimously adopted the hearing officer's recommendation that Hicks be suspended for a period of 24 months.

¶42 Third, we disagree with Hicks' assertion at oral argument that a 24-month suspension is disproportionate to the sanction we imposed in *Cramer*. In that case, the lawyer was suspended for eight months for placing client funds in his business account. He also received a reprimand for " 'more than negligent[ly] but not knowing[ly]' " making misrepresentations to the WSBA. *Cramer*, 165 Wn.2d at 331 (alterations in original) (internal quotation marks omitted) (quoting board finding). The hearing officer in *Cramer* recommended an eight-month suspension and a reprimand, the Board unanimously adopted the recommendation, and we approved it. This case is not similar or analogous to *Cramer* because, as discussed, the hearing officer and the Board recommended that Hicks be suspended for 24 months based on the misrepresentations he knowingly made to the WSBA.

¶43 Fourth, our jurisprudence belies Hicks' argument that the recommended sanction in this case is disproportionate merely because "most cases" in which this court has imposed a 24-month suspension involved a reduction from the presumptive sanction of disbarment is without merit. Appellant's Opening Br. at 22-23. The presumptive sanction and the sanction imposed are both to be determined on a case-by-case basis. *In re Disciplinary Proceeding Against Heard*, 136 Wn.2d 405, 424-25, 963 P.2d 818 (1998) (sanction imposed); *In re Disciplinary Proceeding Against McLendon*, 120 Wn.2d 761, 769, 845 P.2d 1006

(1993) (presumptive sanction). So long as it is warranted under the circumstances of a case, a 24-month suspension is not disproportionate merely because the presumptive sanction was suspension and not disbarment.

¶44 Finally, this case is distinguishable from *Whitt*, the case cited by the WSBA in support of its claim that the recommended sanction is disproportionately light. As the hearing officer correctly noted in her decision, the facts of this case differ from *Whitt*. While the lawyer in *Whitt* provided an incomplete response to the WSBA, unlike Hicks, she took the "extra step" of engaging in fraudulent conduct by fabricating multiple documents when responding to the WSBA. CP at 213.

## IV

¶45 In conclusion, we are satisfied that Hicks committed the acts of misconduct alleged in count 6. As neither Hicks nor the WSBA has shown there to be a clear reason to depart from the sanction recommended by the hearing officer and adopted by the unanimous Board, we are not inclined to disturb it. We therefore adopt the recommended sanction and order that attorney S. Richard Hicks be suspended from the practice of law for 24 months.

C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.